1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    VINCENT SOLOMON,                          No.  2:08-cv-02544 JFM P

12                 Plaintiff,

13          v.                                   ORDER

14    T. FELKER, et al.,

15                 Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights

18   action pursuant to 42 U.S.C. § 1983.  This matter is proceeding before a United States Magistrate

19   Judge pursuant to 28 U.S.C. § 636(c).  See Consents filed December 11, 2008, and October 22,

20   2010.  This action is proceeding on plaintiff's fourth amended complaint, filed May 29, 2012.

21   (ECF No. 96.)  This matter is before the court on defendants' motion to dismiss pursuant to Fed.

22   R. Civ. P. 12(b)(6).  (ECF No. 101.)  Also before the court are two motions submitted by

23   plaintiff, one styled as a request for a fourteen day extension of time (ECF No. 107), and the other

24   styled as a request for a court order for legal supplies and legal copies (ECF No. 109).  The court

25   addresses each motion in turn.

26   ////

27   ////

28   ////

1

DEFENDANTS' MOTION TO DISMISS

LEGAL STANDARDS FOR A MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007). However, "[s]pecific facts are not necessary; the statement [of facts] need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" Erickson, 551 U.S. at 93 (quoting Bell Atlantic Corp., 550 U.S. at 554, in turn quoting Conley v. Gibson, 355 U.S. 41, 47 (1957).

SUMMARY OF THE ALLEGATIONS MADE IN THE FOURTH AMENDED COMPLAINT

Plaintiff's fourth amended complaint contains the following allegations relevant to the motion before the court.

A. CLAIM ONE

On August 3, 2007, plaintiff was called to the Program Office to address a matter regarding his property. (Fourth Am Compl. filed May 29, 2012 (ECF No. 96) at 3.) After leaving the office, plaintiff was ordered to return. (Id.) Upon doing so, plaintiff was met by defendants Santana, Oschner, and Brautigam, "who placed [him] in a holding cage," strip searched him for weapons, and then told him to leave. (Id.) Plaintiff "was never told why, [sic] they called [him] back." (Id. at 3-4.)

Upon leaving the Program Office, plaintiff noticed inmates on one side of the yard and that defendants Wright, Peery, Plainer, Schirmer, Amero, Lynn, and an unidentified officer "came out to watch the front of the yard and to watch [him]." (Id. at 4.) Plaintiff turned towards the defendant officers and told them that he "seen [sic] the set up and they was going to get me hit

2

1  'stab or assault' [sic]." (Id.)  The defendants responded by telling plaintiff to "get the fuck

2  away."  (Id.)  Plaintiff then attempted to walk across the yard, choosing a route by the basketball

3  court so that his "back would be protected by the wall."  (Id.)  However, defendant Santana

4  "called up to the tower to make [plaintiff] get off of the court [and] onto race track."  (Id.)

5     While plaintiff crossed the track, three inmates stood up and started walking towards him.

6  (Id.)  Two of these inmates worked for defendant Santana on the yard crew, and the other worked

7  for defendant Wright on the "M.A.C. Mack Committee."  (Id.)  As the inmates approached him,

8  plaintiff noticed the defendant officers standing behind him, doing "nothing."  (Id.)  Once the

9  inmates reached plaintiff's location, they began to punch and kick him, and "poked [him]

10  repeatedly with a weapon."  (Id. at 4-5.)  Plaintiff sustained only minor injuries from the attack

11  due to his attempts at defending himself.  (Id. at 5.)

12     The defendant officers responded to this incident by using "mk-pepper spray and batons

13  on [plaintiff]," and not using any force on plaintiff's attackers.  (Id.)  During this response,

14  defendant Santana removed the weapon used against plaintiff from one of the attackers and told

15  that inmate that he would "talk later."  (Id.)  Then, defendant Santana "took [plaintiff] and only

16  two of [his] attackers to the program office."  (Id.)

17     Plaintiff alleges that the "[s]taff knew of this attack prior [sic] months and days before it

18  happen [sic]."  (Id.)  During a prior incident, defendant Torres-Hazelton told plaintiff that "she

19  was going to pay other inmates to rape [him], beat [him] up and kill [him]."  (Id.)  Plaintiff

20  reported what defendant Torres-Hazelton had told him "to staff in a 602 appeal and verbally."

21  (Id.)  Additionally, "a yard informant told staff [plaintiff] was going to get hit if [he went] back to

22  c/o Torres Hazelton Building," which is the building he was housed in at the time of the attack.

23  (Id.)

24     Plaintiff claims that the above factual allegations constitute a violation of his First, Eighth,

25  and Fourteenth Amendment rights.  (Id.)

26     B. CLAIM TWO

27     On August 3, 2007, after the attack, plaintiff was placed in a holding cage in the Program

28  Office while awaiting medical attention.  (Id.)  Dr. Dudley gave medical attention to the two

3

attacker inmates who were also present in the office; however, he did not give plaintiff any medical attention.  (Id. at 5-6.)  When plaintiff complained about the lack of treatment, defendant Amero "ordered everybody out of the program office."  (Id. at 6.)  Neither Dr. Dudley nor the registered nurse who was also present "were allowed to examine [plaintiff] or complete a C.D.C.R. 7219 Form," which is used to describe whether an inmate is suffering from any injuries.  (Id.)  Plaintiff was not "allowed to decontaminate for hours" and "was sprayed, bleeding, bruised and was having problems to breath [sic]" because he is a chronic asthmatic.  (Id.)  Plaintiff asserts that this alleged denial of medical care resulted in a violation of his Eighth and Fourteenth Amendment rights.  (Id.)

### C. CLAIM THREE

After defendant Amero ordered everyone out of the Program Office, defendant Santana cuffed plaintiff's hands behind his back through a slot in plaintiff's holding cage.  (Id.)  Defendants Hawk, Oschner, Peery, Plainer, Schirmer, Ulbricht, and Wright were also present in the office at this time.  (Id.)  After the cage was opened, plaintiff was held down by defendant Santana and "c/o Brautigam took turns beating [plaintiff]," punching him in his "lower back, rips [sic], legs, thighs and face."  (Id.)  One of the officers "busted [plaintiff's] eyes with the ring he had on."  (Id.)  While plaintiff was being assaulted, defendant Amero "yelled at the c/o officer who busted [plaintiff's] eyes to get out of there."  (Id. at 7.)  After this incident, plaintiff was provided with no medical attention.  (Id.)  On the basis of these factual allegations, plaintiff claims that Amero violated his First, Eighth, and Fourteenth Amendment rights.  (Id.)

### D. CLAIM FOUR

From August 3, 2007 to August 14, 2007 plaintiff submitted medical slips to defendants Buhay, Christopherson, and Hutchinson seeking care for the injuries he sustained on August 3, 2007.  (Id.)  Additionally, he made verbal requests to all three defendants.  (Id.)  As a result of these requests and slips, on August 6, 2007, plaintiff was taken to the infirmary and given a urine test by a registered nurse to test for any internal bleeding.  (Id.)  The registered nurse "called the doctor on call and recommended that [plaintiff] be rushed to the outside hospital in Lassen County."  (Id.)  However, the unidentified "doctor on call" refused the recommendation, stating

4

that there was not enough money or staff to transport plaintiff to the hospital.  (Id.)

Plaintiff was later examined on August 14, 2007 by defendant Dr. French regarding a medical grievance for dry skin lotion he had filed in June or July of 2007, which was unrelated to his August 3, 2007 injuries.  (Id.)  During this examination, Dr. French refused to treat plaintiff for the injuries he had sustained on August 3, 2007 and only offered to address plaintiff's dry skin grievance.  (Id.)

Defendant Jackson reviewed the medical appeals and staff complaints that plaintiff filed regarding the August 3, 2007 incident, in addition to appeals plaintiff filed on August 6, 2007 and August 14, 2007, respectively.  (Id. at 8.)  After review, Jackson "screened out and cancelled" each appeal and complaint that plaintiff had filed, claiming that each medical appeal was a duplicate of the one that plaintiff filed for dry skin lotion in June or July of 2007.  (Id.)  When plaintiff requested copies of staff statements concerning plaintiff's August 3, 2007 incident, Jackson told him this information was confidential and that he was not allowed to have a copy. (Id.)

Plaintiff alleges that the above factual allegations resulted in violations of his First, Eighth, and Fourteenth Amendment rights.  (Id.)

E. CLAIM FIVE

Plaintiff alleges that after the events of August 3, 2007, defendants Amero, Brautigam, Hawks, Lynn, Oschner, Peery, Plainer, Santana, Schirmer, Ulbricht, and Wright failed to properly document plaintiff's injuries in violation of institutional policies.  (Id. at 9.)  Additionally, the above defendants placed plaintiff in administrative segregation without any medical treatment; they "never allowed [plaintiff] to flush out his eyes or gave [him] a shower or fresh clothes." (Id.)  Finally, plaintiff "wasn't allowed to press charges" or obtain a copy of the incident package to for use against his inmate attackers or "the C.D.C.R. staff who beated [sic] [him] up."  (Id. at 9-10.)  Based on these factual allegations, plaintiff claims that the above defendants violated his First, Eighth, and Fourteenth Amendment rights.  (Id.)

////

////

5

1        F. <u>CLAIM SIX</u>

2        On September 7, 2007, defendants Brooks, Doyle, and Hitchcock removed plaintiff from

3 his cell in the administrative segregation unit and stripped the cell of all of plaintiff's personal

4 property and legal work.  (<u>Id.</u> at 10.)  After this search, defendants Carter, Noyes, Plainer, and

5 Statti approached plaintiff and stated that if plaintiff were to withdraw all of his 602 appeals and

6 staff complaints against them, then they would ensure that he would be transferred to another

7 prison of his choice.  (<u>Id.</u> at 10-11.)  Plaintiff refused this offer.  (<u>Id.</u> at 11.)  Defendants Jackson

8 and Wright arrived during this interaction and Wright extended to plaintiff the same offer, stating

9 that this was plaintiff's "last chance."  (<u>Id.</u>)  After plaintiff further refused, he was taken back to

10 his cell by defendant Hitchcock in violation of prison regulations requiring that inmates be

11 escorted by two officers.  (<u>Id.</u>)

12        After plaintiff made a request to Hitchcock that he be taken to the yard, Hitchcock refused

13 and subjected him to a strip search.  (<u>Id.</u>)  During this search, Hitchcock took the insole out of one

14 of plaintiff's shoes and "threw it over the tier."  (<u>Id.</u>)  Plaintiff showed Hitchcock a medical

15 chrono stating that he was allowed to have insoles, which Hitchcock took from plaintiff and threw

16 on the ground.  (<u>Id.</u>)  Hitchcock then snatched plaintiff's other shoe out of his hand.  <u>Id.</u>  Plaintiff

17 complained that if Hitchcock hurt him, then he would file a staff complaint.  (<u>Id.</u>)  In response,

18 Hitchcock said "Fuck you Solomon and you just lost your exercise yard," and then left.  (<u>Id.</u>)  A

19 half hour later, defendants Brooks, Carter, Cobb, and Doyle took plaintiff to see a staff nurse who

20 told plaintiff that Hitchcock had filed charges against plaintiff for assault and battery.  (<u>Id.</u>)

21 Plaintiff denied these allegations and claimed that Hitchcock had filed a false report against him.

22 (<u>Id.</u> at 11-12.)  Plaintiff was subsequently found guilty of the charges by defendants Plainer,

23 Statti, and Wright and was "punished" as a result of this finding.  (<u>Id.</u> at 12.)  Plaintiff alleges that

24 this guilty determination was made in violation of his Due Process rights.  (<u>Id.</u> at 12-13.)

25        Later that day, defendants Brooks, Cobb, Doyle, and Hitchcock took plaintiff to a

26 different cell, "took all of [his] property, legal work, cosmetics and cotton blankets," and made

27 him sleep on the floor with a wool blanket.  (<u>Id.</u> at 12.)  Plaintiff is allergic to wool and "had

28 medical chronos for cotton blankets and dry skin lotion."  (<u>Id.</u>)  The use of the wool blankets

caused plaintiff to break out "in rashes, soars [sic] and the flu."  (Id.)  Plaintiff also "wasn't

allowed to change [his] clothing or given any exercise yard."  (Id.)  From September 7, 2007, to

September 30, 2007, plaintiff was exposed to freezing temperatures.  (Id. at 13.)  Also during this

period, plaintiff repeatedly made requests to defendants Cimino, Kalbach, and Rana to have his

legal work returned to him.  (Id.)

Plaintiff claims that these alleged facts show that his First, Eighth, and Fourteenth

Amendment rights were violated by the defendants named above.  (Id.)

### G. CLAIM SEVEN

On October 17, 2007, defendant Statti held a "115 R.V.R. Hearing" regarding the assault

and battery charges Hitchcock had brought against plaintiff on September 7, 2007.  (Id.)  During

this hearing, Statti "refuse [sic] to allow [plaintiff] to call witnesses and present [his] evidence."

(Id. at 14.)  Statti told plaintiff that "it don't matter what [plaintiff] say [sic] or do [sic] or show

him" and that plaintiff was "still going to be found guilty regardless."  (Id.)  When plaintiff was

taken back to his cell, defendants Brooks, Carter, and Cobb had already placed a "Loss of

Privileges" form on the cell door.  (Id.)  Defendants Carter, Cobb, Doyle, and Hitchcock removed

plaintiff's" canteen, exercise yard, [and] legal work" and continued to enforce Statti's "retaliation

tactics" against plaintiff.  (Id.)  As a result, plaintiff was "held illegally in a S.H.U." from August

3, 2007, until December 27, 2008, which was beyond what his term in the S.H.U. was supposed

to be prior to this "retaliation."  (Id.)  Plaintiff asserts that these alleged facts show that Brooks,

Carter, Cobb, Doyle, Hitchcock, and Statti violated his First, Eighth, and Fourteenth Amendment

rights.

### H. CLAIM EIGHT

On September 7, 2007, defendant Statti ordered defendants Brooks, Carter, Doyle, and

Noyes to confiscate plaintiff's "legal work and personal property" regarding an active court case

he had been working on.  (Id. at 15.)  The officers destroyed, among other things, the affidavits

and declarations of the witnesses and the victim.  (Id.)  Plaintiff alleges that the evidence within

the destroyed documents would have led the court to overturn his conviction and that Statti's

order "caused [plaintiff] to lose [his] opportunity to get [his] freedom."  (Id.)  Statti also told

1  defendants Cimino, Kalbach, and Rana "to go into [plaintiff's] property and destroy any and all

2  declarations and confession letters and photos" of certain individuals linked to the case plaintiff

3  was working on.  (Id.)  All of the originals of these documents were destroyed.  (Id.)

4       Plaintiff also alleges that Statti forced him to sleep on the floor in his cell with wool

5  blankets and refused to give plaintiff cosmetics and dry skin lotion even though Statti knew that

6  plaintiff had a medical chrono that stated that he was allergic to wool and that he had a dry skin

7  disease called "incema [sic]."  (Id.)  Based on these factual allegations, plaintiff claims that the

8  above defendants violated his First, Eighth, and Fourteenth Amendment rights.  (Id.)

9       I. CLAIM NINE

10       From October 17, 2007, to March 6, 2008, defendant Jackson "cancelled and rejected all

11  of [plaintiff's] 602 appeals and staff complaints.  (Id. at 16.)  Specifically, Jackson rejected

12  appeals plaintiff had filed on January 29, 2008, against her and against those involved in the

13  October 17, 2007 disciplinary hearing.  (Id.)  Additionally, she cancelled all of plaintiff's medical

14  appeals and refused to provide him with copies of documents he requested on March 6. 2008.

15  (Id.)  Plaintiff argues that, on the basis of these factual allegations, Jackson violated his First,

16  Eighth, and Fourteenth Amendment rights.  (Id. at 17.)

17  DEFENDANTS' MOTION TO DISMISS

18       Defendants contend that plaintiff's fourth amended complaint fails to state cognizable

19  claims with respect to the following: (1) all claims against defendants Brooks, Buhay, Carter,

20  Christopherson, Cimino, Cobb, Doyle, Hitchcock, Hutchinson, Jackson, Kalbach, Noyes, Pena,

21  Rana, and Torres-Hazelton; (2) the entirety of plaintiff's first, second, fifth, sixth, and ninth

22  claims; (3) plaintiff's third and fourth claims to the extent they are predicated on the First and

23  Fourteenth Amendments; (4) plaintiff's seventh claim to the extent that it is predicated on the

24  First and Eighth Amendments; and (5) plaintiff's eighth claim to the extent that it is predicated on

25  the Fourteenth Amendment.[1]  (Motion to Dismiss filed November 3, 2012 (ECF No. 101) at 2.)

26  
27  [1] Defendants concede the sufficiency of the following claims in their motion to dismiss: (1) that plaintiff's allegations in claim three are sufficient to state causes of action under the Eighth Amendment against defendants Amero, Brautigam, Hawks, Oschner, Peery, Plainer, Santana,

28  Schirmer, Ulbricht, and Wright for deliberate indifference to plaintiff's serious medical needs,

1    The court addresses each of plaintiff's claims and defendants' corresponding contentions in turn.

2         A. <u>CLAIM ONE</u>

3         Defendants assert that the entirety of plaintiff's first claim should be dismissed as to all

4    defendants named therein for failure to state any claim for which relief can be granted under

5    either the First, Eighth, or Fourteenth Amendments.  (<u>Id.</u> at 4-9.)  The court addresses each

6    constitutional claim in turn.

7         1. <u>FIRST AMENDMENT</u>

8         In his fourth amended complaint, plaintiff argues that the facts alleged in each of his nine

9    claims amount to a violation of his First Amendment rights.  Construed liberally, it appears to the

10   court that plaintiff's First Amendment claims are all predicated on a theory of retaliation.

11        Prison officials generally cannot retaliate against inmates for exercising First Amendment

12   rights.  <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1985).  Among these rights is the right to

13   file an inmate grievance against prison officials and "to be free from retaliation for doing so."

14   <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262,

15   1269 (9th Cir. 2009)).  In order to bring a claim for retaliation, a plaintiff must allege the

16   existence of five elements: (1) that the retaliated-against conduct is protected; (2) that the

17   defendant took adverse action against plaintiff; (3) that there exists a causal connection between

18   the defendant's retaliatory action and plaintiff's protected conduct; (4) that the defendant's

19   actions would chill an ordinary person's exercise of his First Amendment rights; and (5) that the

20   defendant's action did not reasonably advance a legitimate correctional goal.  <u>Watison</u>, 668 F.3d

21   at 1114.  "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint,

22   allegation of a chronology of events from which retaliation can be inferred is sufficient to survive

23

24       against defendants Brautigam and Santana for use of excessive force, and against defendants
     Amero, Hawks, Oschner, Peery, Plainer, Schirmer, Ulbricht, and Wright for failure to protect

25   (ECF No. 101 at 10); (2) that plaintiff's allegations in claim four sufficiently state a cause of
     action against defendant French for deliberate indifference to plaintiff's serious medical needs

26   under the Eight Amendment (<u>id.</u> at 11); (3) that plaintiff alleges sufficient facts in claim seven to
     state a procedural due process claim against defendant Statti under the Fourteenth Amendment

27   (<u>id.</u> at 15); and (4) that plaintiff alleges facts in claim eight that give rise to cognizable claims
     against defendant Statti under the First and Eighth Amendments (<u>id.</u>).

28

1   dismissal." Id.

2          With regards to plaintiff's factual allegations in claim one, plaintiff's alleged filing of a

3   grievance against defendant Torres-Hazelton is a protected action under the First Amendment,

4   Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009), thus meeting the first element.  However,

5   claim one fails to sufficiently allege that there exists a causal connection between plaintiff's filing

6   of the grievance and the defendant officers' inaction leading up to the attack or their allegedly

7   adverse treatment of plaintiff when they responded to the attack.  Plaintiff alleges only that he had

8   told "staff" about his grievance against Torres-Hazelton regarding the prior incident, that the

9   "staff knew of this attack prior [sic] months and days before it happen [sic]," that the defendant

10  officers did not attempt to preempt the attack, and that the officers responded to the attack by

11  using force on plaintiff and not his attackers.  (ECF No. 96 at 4-5.)  Plaintiff alleges nothing

12  regarding whether the defendant officers' actions were in any way motivated by or otherwise

13  connected to plaintiff's filing of the grievance against Torres-Hazelton.[2]  Moreover, plaintiff fails

14  to allege any facts that suggest that defendants' actions failed to advance a legitimate correctional

15  goal.  See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) ("The plaintiff bears the burden of

16  pleading and proving the absence of legitimate correctional goals for the conduct of which he

17  complains.").  Accordingly, defendants are correct in arguing that plaintiff fails to plead facts

18  sufficient for a First Amendment retaliation claim.

19  ////

20  _____

21  [2] In his opposition to defendants' motion to dismiss, plaintiff attempts to substantiate his
    retaliation claim with additional allegations regarding the events leading up to the attack on
    August 3, 2007.  In particular, plaintiff alleges that the defendant officers knew of his staff

22  complaint against Torres-Hazelton and that the defendants all had approached plaintiff prior to
    the attack and offered to transfer him to another prison of his choice if he agreed to drop his

23  grievance against Torres-Hazelton.  (Opposition filed January 14, 2013 (ECF No. 108) at 4.)
    Nevertheless, these additional factual allegations, when taken as true, do not sufficiently connect

24  the officers' response to the August 3, 2007 attack to plaintiff's filing of the grievance.  Plaintiff
    fails to make the requisite showing that the defendant officers were motivated by plaintiff's filing

25  of the grievance in responding to the attack in the manner plaintiff alleges.  Moreover, even if
    these additional allegations were sufficient to show a causal connection between defendants'

26  actions and plaintiff's filing of the grievance, plaintiff still fails to sufficiently plead facts that
    show that defendants' actions lacked a legitimate correctional purpose such as to maintain or

27  restore discipline, as is necessary to state a cognizable retaliation claim under the First
    Amendment.  See Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

28

1          2. EIGHTH AMENDMENT

2          The Eighth Amendment prohibits state actors from acting with deliberate indifference to

3   an inmate's health or safety.  See Farmer v. Brennan, 511 U.S. 825 (1994).  A claim based on

4   deliberate indifference to health or safety has two elements.  First, an inmate must show that he

5   was "incarcerated under conditions posing a substantial risk of serious harm."  Id. at 834.

6   Second, the inmate must show that defendants acted with "deliberate indifference" to that risk.

7   Id.  Deliberate indifference is shown by proof that a prison official was "both aware of facts from

8   which the inference could be drawn that a substantial risk of serious harm exists" and that he

9   drew the inference.  Id. at 837.

10          Additionally, an Eighth Amendment claim may be predicated on an officer's use of

11   excessive force when interacting with a prisoner.  "When prison officials use excessive force

12   against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and

13   unusual punishment."  Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  "Force does not

14   amount to a constitutional violation in this respect if it is applied in a good faith effort to restore

15   discipline and order and not 'maliciously and sadistically for the very purpose of causing harm.'"

16   Id. (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

17          Pertinent to a deliberate indifference theory, plaintiff alleges that he was placed back in

18   the same building where Torres-Hazelton told him that she was going to pay inmates to harm

19   him, that the "staff" was informed of this threat, and that the "staff knew of this attack" before it

20   occurred.  (ECF No. 96 at 5.)  Nevertheless, the facts alleged in claim one fail to state a cause of

21   action on the basis of deliberate indifference.  Plaintiff alleges no facts indicating that the specific

22   officers on the yard were aware that this event was going to happen, that they had purposefully

23   assisted in setting it up, or that they knowingly acquiesced to its occurrence.  Instead, plaintiff

24   makes the bare allegation that "staff knew of this attack prior [sic] months and days before it

25   happen [sic]."  (Id.)  "Vague and conclusory allegations of official participation in civil rights

26   violations are not sufficient to withstand a motion to dismiss."  Pena v. Gardner, 976 F.2d 469,

27   471 (9th Cir. 1992) (quoting Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th

28   Cir. 1982)).  Due to the absence of any allegations that the defendants named in this claim were

specifically aware of the attack prior to its occurrence, plaintiff fails to sufficiently allege an Eighth Amendment claim based on a theory of deliberate indifference.

With respect to a claim based on a theory of excessive force, plaintiff also fails to allege sufficient facts.  Plaintiff claims that the defendant officers, in their response to the attack, only applied force against plaintiff and not his attackers and that this force was "excessive."  (ECF No. 96 at 5.)  However, plaintiff fails to allege any facts that show that the defendants' response to the attack was carried out maliciously and sadistically, not in a good faith effort to maintain or restore discipline.  See Wilkins v. Gaddy, 559 U.S. 34, 40 (2010) (holding that, to prevail on an excessive force claim, a plaintiff must allege "not only that the assault actually occurred but also that it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline").  Because plaintiff fails to allege that defendants' use of force against him in response to the attack was carried out in a malicious manner, he fails to adequately state a claim based on excessive force.

### 3. FOURTEENTH AMENDMENT

Plaintiff also makes the assertion that the facts alleged in claim one amount to a deprivation of his Fourteenth Amendment rights without specifying which of his rights under the Amendment have been violated.  Based on a liberal construction of the complaint, the court finds that plaintiff refers more specifically to the Due Process Clause of the Fourteenth Amendment each time he alleges violations of his Fourteenth Amendment rights.[3]  (See, e.g., ECF No. 96 at 13.)

First, it must be noted that defendants are correct in stating that to the extent that plaintiff alleges violations of "substantive" due process rights in his fourth amended complaint, such claims are necessarily subsumed by the protections afforded by the Eighth Amendment.  In Whitley v. Albers, 475 U.S. 312 (1986), the Supreme Court held that the Fourteenth

---

[3] Plaintiff claims that the facts alleged in each of his nine claims amount to violations of his Fourteenth Amendment rights.  It appears that each time plaintiff claims such a violation, he is asserting that his due process rights have been violated.  Accordingly, the court analyzes each of plaintiff's Fourteenth Amendment claims under the legal standards for due process.

1   Amendment's substantive protections provide no greater protection to convicted prisoners than do

2   the rights protected by the Cruel and Unusual Punishments Clause of the Eighth Amendment.

3   "The Eighth Amendment, which is specifically concerned with the unnecessary and wanton

4   infliction of pain in penal institutions, serves as the primary source of substantive protection to

5   convicted prisoners." Id. at 327.  Accordingly, to the extent plaintiff's claims are based on the

6   Fourteenth Amendment, the court addresses them using a "procedural" due process analysis.

7        The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives

8   a person of life, liberty, or property without due process of law.  A claim for violation of

9   "procedural" due process has two components.  A litigant must first demonstrate that he was

10   deprived of a liberty or property interest protected by the Due Process Clause.  Kentucky Dep't of

11   Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).  Next, he must allege facts sufficient to

12   show that show that the procedures attendant upon the deprivation were not constitutionally

13   sufficient.  Id.  With respect to the allegations in claim one, plaintiff alleges absolutely no facts

14   that indicate that the defendants deprived him of a liberty or property interest without a fair

15   hearing or notice in connection with the August 3, 2007 incident.  Accordingly, to the extent that

16   plaintiff attempts to base his cause of action in claim one on the Fourteenth Amendment, he fails

17   to sufficiently state a claim against any of the named defendants.

18        Plaintiff fails to sufficiently state a claim in claim one under the First, Eighth, and

19   Fourteenth Amendments.  Because of this, the court agrees with defendants that plaintiff fails to

20   state any cause of action in claim one.  Plaintiff's first claim is dismissed with prejudice.

21        B. CLAIM TWO

22        Defendants contend that plaintiff fails to allege facts sufficient to state a claim for

23   deliberate indifference against defendant Amero in claim two.  (ECF No. 101 at 9.)  The court

24   finds this argument to lack merit.

25        In the context of medical treatment, a cause of action for deliberate indifference arises

26   upon a showing that two elements have been met.  First, "the plaintiff must show a 'serious

27   medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further

28   significant injury' or the 'unnecessary and wanton infliction of pain.'"  Jett v. Penner, 439 F.3d

1   1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  Next, the

2   plaintiff needs to show that the defendant prison official acted with "deliberate indifference,"

3   which may be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible

4   medical need and (b) harm caused by the indifference."  Id. (citing McGuckin v. Smith, 974 F.2d

5   1050, 1059 (9th Cir. 1992)).  "Indifference 'may appear when prison officials deny, delay or

6   intentionally interfere with medical treatment . . . .'"  Id. (quoting McGuckin, 974 F.2d at 1059

7   (in turn quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988)).

8           In his complaint, plaintiff alleges that he "was sprayed, bleeding, bruised and was

9   having problems to breath [sic]" after he had been attacked, (ECF No. 96 at 6), showing that he

10  was in pain and had serious medical need.  He further alleges that when he complained about

11  being left untreated, Amero ordered everyone, including Dr. Dudley, who was tending to the

12  inmates' injuries, out of the office and did not allow Dr. Dudley or a nurse who was also present

13  to examine or treat plaintiff.  (Id.)  These factual allegations gives rise to a plausible inference that

14  plaintiff had serious medical need and that Amero intentionally interfered with the impending

15  treatment of plaintiff's injuries; in other words, they show that Amero knew of plaintiff's medical

16  need and actively tried to keep plaintiff from receiving care.  Thus, plaintiff's allegations satisfy

17  the first requirement for deliberate indifference.  See Jett, 439 F.3d at 1096.

18          Defendants argue that the alleged facts show that Dr. Dudley had already refused to treat

19  plaintiff prior to Amero's order to leave.  (ECF No. 101 at 10.)  However, the complaint contains

20  no such allegation; rather, plaintiff alleges that he was "left untreated" prior to Amero's order,

21  (ECF No. 96 at 6), leaving the possibility that he would have received care had Amero not

22  ordered everyone to leave and prevented Dr. Dudley and the nurse from examining plaintiff.

23  Defendants also contend that the claim must fail because plaintiff fails to allege that he requested

24  Amero to summon medical care or to allow him to decontaminate.  (ECF No. 101 at 10.)

25  However, the lack of such facts are not detrimental to plaintiff's claim because he has sufficiently

26  alleged facts plausibly inferring that Amero deliberately interfered with plaintiff's access to

27  medical treatment from Dr. Dudley.

28  ////

14

1    Plaintiff also alleges facts sufficient to meet the second element: as a result of not

2    receiving medical attention, he allegedly suffered permanent damages to his lower back, wrists,

3    and shoulders.  (ECF No. 96 at 6.)  Accordingly, plaintiff alleges facts in claim two that, when

4    taken as true, are sufficient to state a cause of action against Amero based on deliberate

5    indifference to his serious medical needs.

6    Defendants also assert that plaintiff fails to allege facts sufficient to state a due process

7    claim cognizable under the Fourteenth Amendment.  (ECF No. 101 at 10.)  The court agrees.  The

8    facts alleged in claim two fail to assert any violations of procedural rights or substantive rights

9    beyond those already addressed by plaintiff's Eighth Amendment deliberate indifference claim.

10    Nevertheless, because the court finds that plaintiff has sufficiently alleged facts in claim two for a

11    cause of action against Amero based on deliberate indifference, defendants' motion to dismiss is

12    denied with respect to claim two to the extent that plaintiff's claim is predicated on the Eighth

13    Amendment.

14    C. <u>CLAIM THREE</u>

15    Defendants concede that plaintiff alleges facts sufficient to bring claims against all

16    defendants named in claim three for deliberate indifference under the Eighth Amendment.  (ECF

17    No. 101 at 10.)  They also concede that plaintiff sufficiently states claims against Brautigam and

18    Santana for excessive force, and Amero, Hawks, Oschner, Peery, Plainer, Schirmer, Ulbricht, and

19    Wright for failure to protect.  (<u>Id.</u>)  However, defendants assert that claim three fails to allege

20    facts sufficient for causes of action based on First Amendment retaliation and Fourteenth

21    Amendment due process theories.  (<u>Id.</u>)  The court agrees with defendants' assessment.

22    Nowhere in his third claim does plaintiff allege that the actions taken by the defendant

23    officers were done in retaliation for plaintiff's exercise of his First Amendment rights; he merely

24    states that the defendant officers attacked him and failed to provide him with medical attention

25    after the fact.  Because of the absence of any facts tying defendants' alleged actions to plaintiff's

26    exercise of protected activity, plaintiff's First Amendment claim must be dismissed.  <u>See</u> <u>Watison</u>

27    <u>v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012).  Similarly, plaintiff alleges absolutely no facts in

28    claim three suggesting that defendants' actions have denied him any procedural due process

1  rights.  Accordingly, claim three is dismissed to the extent that it is predicated on the First and

2  Fourteenth Amendments.

3       D. <u>CLAIM FOUR</u>

4       Defendants concede that plaintiff alleges facts that state a claim against defendant French

5  for deliberate indifference under the Eighth Amendment.  (ECF No. 101 at 11.)  Defendants

6  contend, however, that plaintiff's allegations in claim four are insufficient to substantiate any

7  claims against the remaining defendants, namely Buhay, Christopherson, Hutchinson, and

8  Jackson.  (<u>Id</u>.)  Additionally, defendants argue that plaintiff fails to allege facts giving rise to

9  cognizable claims against French under the First and Fourteenth Amendments.  (<u>Id</u>.)  The court

10  agrees with defendants' assertions.

11       With respect to Buhay, Christopherson, and Hutchinson, plaintiff only alleges that he gave

12  medical slips to all three and had spoken to each regarding his medical condition.  (ECF No. 96 at

13  7.)  Plaintiff fails to allege any additional facts that would indicate that any of the three denied,

14  delayed, or intentionally interfered with plaintiff' medical needs.  <u>See Jett</u>, 439 F.3d at 1096

15  (citing <u>McGuckin</u>, 974 F.2d at 1059).  Accordingly, the alleged facts involving these defendants

16  do not give rise to an Eighth Amendment claim for deliberate indifference.[4]  Furthermore, there

---

17  [4] The court acknowledges that plaintiff attempts to allege additional "facts" in his opposition to
defendants' motion to dismiss regarding the actions of Buhay, Chistopherson, and Hutchinson

18  with respect to the medical slips he alleges he submitted to them.  Specifically, he makes
additional allegations that, after submitting his medical slips, each of these defendants

19  interviewed and inspected plaintiff at his cell door.  (ECF No. 108 at 14.)  He further alleges that
his "eye, head, hands, stab wounds" were clearly visible, but that all three refused to treat him.

20  (<u>Id</u>.)  Additionally, he claims that his "medical needs was [sic] ignored for days" and that all three
"ignored [his] pain and suffering and gave [him] zero attention after [he] fell out from [his]

21  injuries."  (<u>Id</u>.)  These additional "facts" alleged in plaintiff's opposition are in direct
contradiction of those alleged in the fourth amended complaint, where plaintiff alleges that "[o]n

22  8/6/07 I was rushed to the enfermary [sic] because I gave medical slips to L.V.N. Hutchinson,
Buhay, Christopherson and told them verbally."  (ECF No. 96 at 7.)  Plaintiff fails to give any

23  explanation in his opposition as to why he has failed to include these allegations in any of his five
complaints filed with this court.  Because of the contradiction with plaintiff's actual complaint

24  and because plaintiff has had multiple chances to amend his complaint to include these additional
allegations, the court finds that plaintiff has acted in bad faith and decides not to consider these

25  last minute allegations in determining whether he has stated a claim for deliberate indifference
against Buhay, Christopherson, and Hutchison.  Additionally, for the same reasons the court will

26  not grant plaintiff leave to further amend his complaint to include the additional "facts" claimed
in his opposition.  <u>See California Architectural Bldg. Prod. v. Franciscan Ceramics</u>, 818 F.2d

27  1466, 1472 (9th Cir. 1988) ("Valid reasons for denying leave to amend include undue delay, bad
faith, prejudice, and futility.").

28

1   are absolutely no facts alleged that point to these defendants having acted in a manner that is

2   retaliatory under a First Amendment analysis or that deprived plaintiff of any due process rights

3   under the Fourteenth Amendment.  Accordingly, plaintiff's claims against these three defendants

4   are dismissed.

5          Plaintiff's only allegations regarding Jackson in claim four are that she "screened out and

6   cancelled each 602 appeal and staff complaint" that plaintiff had filed and claimed that each

7   appeal was duplicative of an appeal plaintiff had previously submitted.  (ECF No. 96 at 8.)  These

8   facts are an insufficient basis for a claim of deliberate indifference because they fail to show that

9   Jackson failed to respond to plaintiff's medical needs or that plaintiff suffered a cognizable harm

10  as a result of Jackson's actions.  Additionally, plaintiff fails to allege any facts that show that

11  Jackson screened out the grievances in retaliation for plaintiff's exercise of his First Amendment

12  rights or that her actions deprived him of his due process rights under the Fourteenth Amendment.

13  Therefore, the claims against Jackson alleged under claim four of the complaint are dismissed.

14         As with the other defendants in claim four, plaintiff fails to allege facts against French that

15  give rise to a cause of action for retaliation or for a deprivation of due process.  Plaintiff's claim

16  against French rests entirely on the alleged fact that French refused to treat plaintiff for his

17  ailments beyond his dry skin condition when French examined him.  (ECF No. 96 at 7.)  This fact

18  creates a sufficient basis for an Eighth Amendment deliberate indifference claim, as defendants

19  have conceded; however, it is not sufficient to support plaintiff's claims against French based on

20  the First and Fourteenth Amendments.  Accordingly, plaintiff's First and Fourteenth Amendment

21  claims against French are dismissed.

22         E. <u>CLAIM FIVE</u>

23         Plaintiff alleges in his fifth claim that defendants Amero, Brautigam, Hawks, Lynn,

24  Oschner, Peery, Plainer, Santana, Schirmer, Ulbricht, and Wright failed to adhere to proper

25  departmental procedures when documenting and reporting the incident occurring on August 3,

26  2007.  (ECF No. 96 at 9.)  Plaintiff further alleges that these defendants "never allowed [him] to

27  decontaminate or flush out [his] eyes or gave [him] a shower or fresh clothes."  (<u>Id.</u>)  Defendants

28  contend that these facts are insufficient to raise any cognizable claim against any of the above

named defendants.  (ECF No. 101 at 11.)  Specifically, defendants argue that plaintiff's

allegations fail to state a claim under the First, Eighth, and Fourteenth Amendments.  (Id. at 12.)

The court agrees with defendants' contention.

With respect to plaintiff's claim that these facts give rise to a violation of his First

Amendment rights, the complaint alleges absolutely no facts suggesting that the defendant

officers acted in retaliation.  In claim five, plaintiff merely alleges that there are specific

institutional procedures in place for use-of-force incidents, that defendants failed to follow those

procedures, that defendants did not allow him to decontaminate, and that they did not allow him

to press charges against his attackers.  (ECF No. 96 at 9-10.)  Plaintiff does not allege any

additional facts that even infer that defendants engaged in these actions as a response to plaintiff

exercising his First Amendment rights.  See Watison, 668 F.3d at 1114.  Accordingly, plaintiff

fails to allege facts in claim five sufficient to state a First Amendment claim against the above

defendants.

Additionally, to the extent that plaintiff claims that the named defendants have violated

his Eighth Amendment rights, he fails to allege any facts showing that any of them were

deliberately indifferent to his medical needs.  Plaintiff alleges that he was "in serious pain" and

was "bleeding and couldn't breath [sic]," indicating that he had medical need.  (Id. at 9.)

However, he merely alleges that the defendants "never allowed [him] to decontaminate" and that

they "willingly" violated his rights. (Id.)  Such bare allegations, standing alone, are insufficient to

show that defendants acted with deliberate indifference.  Ashcroft v. Iqbal, 556 U.S. 662 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  Plaintiff fails to allege facts that indicate whether any of the

defendants were actually aware that plaintiff needed decontamination or what actions they took

that show that they "willfully" denied him the treatment he alleges he needed.  See Jett, 439 F.3d

at 1096. Therefore, plaintiff fails to state a cause of action based on the Eighth Amendment

against the defendants named in claim five.

With respect to his claim that his due process rights were violated by the defendants'

alleged actions, plaintiff also fails to sufficiently state a cause of action.  Plaintiff's allegation that

1    the defendants failed to adhere to the prison's own institutional policies and procedures does not,

2    by itself, give rise to the level of a violation of plaintiff's due process rights.   Sandin v. Conner,

3    515 U.S. 472, 481-82 (1995) (stating that prison regulations are "primarily designed to guide

4    correctional officials in the administration of a prison" and are "not designed to confer rights on

5    inmates"); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal

6    constitutional liberty interest in having state officers follow state law or prison officials follow

7    prison regulations."); Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure

8    to adhere to administrative regulations does not equate to a constitutional violation."); see also

9    Armstrong v. Warden of USP Atwater, No. 1:10–CV–173 DLB HC, 2011 WL 2553266, at *8

10   (E.D. Cal. June 24, 2011).  Accordingly, plaintiff fails to state a due process claim based on the

11   allegations made in claim five.

12         For the foregoing reasons, plaintiff fails to state a claim against any of the defendants

13   named in claim five of his fourth amended complaint.  Accordingly, claim five is dismissed

14   without leave to amend.

15         F. CLAIM SIX

16         Plaintiff makes a litany of allegations in claim six.  Boiled down to their essence,

17   plaintiff's allegations are as follows.  First, defendants Carter, Jackson, Noyes, Plainer, and Statti,

18   and Wright all approached plaintiff and stated that if plaintiff were to withdraw all of his 602

19   appeals and staff complaints against them, then they would ensure that he would be transferred to

20   another prison of his choice; but plaintiff refused the offer.  (ECF No. 96 at 10-11.)  Second, on

21   October 7, 2007, defendant Hitchcock filed false charges for assault and battery against plaintiff

22   after the two had a contentious interaction wherein plaintiff had threatened to file a grievance

23   against Hitchcock.  (Id. at 11.)  Based on Hitchcock's report, defendants Statti, Plainer, and

24   Wright found plaintiff guilty of the assault and battery charge and issued punishment.  (Id. at 12-

25   13.)  Plaintiff claims that these alleged facts show a violation of his "due process rights to a fair

26   hearing" and "access to the courts" regarding the matter.  (Id. at 13.)

27         Plaintiff alleges further that, later in that same day, defendants Brooks, Cobb, Doyle, and

28   Hitchcock moved plaintiff to a different cell, "took all of [his] property, legal work, cosmetics

1  and cotton blankets," and made him sleep on the floor with a wool blanket, which caused him to

2  break out "in rashes, soars [sic] and the flu." (Id. at 12.)  Plaintiff is allergic to wool and "had

3  medical chronos for cotton blankets and dry skin lotion." (Id.)  As a result of having the wool

4  blanket, from September 7, 2007, to September 30, 2007, plaintiff was exposed to freezing

5  temperatures. (Id. at 13.)  Also during this period, plaintiff repeatedly made requests to

6  defendants Cimino, Kalbach, and Rana to have his legal work returned to him. (Id.)

7      Defendants argue that the above allegations are insufficient to state any cognizable claim

8  under the First, Eighth, or Fourteenth Amendments. (ECF No. 101 at 14.)  The court agrees with

9  defendants' contention.

10      With respect to the Fourteenth Amendment due process claim, plaintiff fails to state

11  anything beyond conclusory allegations regarding the process he received when he was found

12  guilty of the assault and battery disciplinary charge. The only contention plaintiff makes

13  regarding the process he received is that defendants "chose to violate [his] due process rights to a

14  fair hearing and be issued [sic] a RVR 15 Report before [he was] found guilty and punished."

15  (ECF No. 96 at 13.)  Such an allegation fails to give the court or defendants any notice as to what

16  process was given to plaintiff regarding the assault and battery charge and what, if any,

17  deficiencies in process there may have been.  In the absence of factual allegations concerning

18  such crucial aspects of a procedural due process claim, claim six fails to state a claim for which

19  relief can be granted under the Fourteenth Amendment.  See Ashcroft, 556 U.S. at 679 ("[W]here

20  the well-pleaded facts do not permit the court to infer more than the mere possibility of

21  misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

22  relief.'") (citing Fed. Rule Civ. Proc. 8(a)(2)).

23      Furthermore, even if it is taken as true that the guilt determination was made entirely

24  based on a false report filed by Hitchcock, plaintiff would still not be able to state a due process

25  claim against any of the named defendants.  "[A] prisoner does not have a constitutional right to

26  be free from wrongfully issued disciplinary reports." Carter v. Cannedy, No. 08 CV 2381 JCW,

27  2010 WL 3210856 (E.D. Cal. Aug. 10, 2010) (quoting Buckley v. Gomez, 36 F.Supp.2d 1216,

28  1222 (S.D.Cal.1997)); see also Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) (holding

1    that "an allegation that a prison guard planted false evidence that implicates an inmate in a

2    disciplinary infraction" is insufficient to state a cognizable procedural due process claim where

3    proper procedural protections are otherwise provided).  Therefore, the mere allegations that

4    Hitchcock's report was false and was relied upon by Statti, Plainer, and Wright in finding plaintiff

5    guilty are not sufficient to survive dismissal.

6        Plaintiff also fails to sufficiently allege facts in claim six that give rise to a violation of his

7    Eighth Amendment rights.  In particular, plaintiff fails to allege facts showing that Brooks, Cobb,

8    Doyle, and Hitchcock acted with deliberate indifference when they replaced plaintiff's cotton

9    blanket with a wool one and when he was exposed to freezing temperatures.  Plaintiff alleges that

10   he is allergic to wool, that the wool blanket caused him to break out in a rash and other ailments,

11   and that he had a medical chrono stating that he had a wool allergy.  (ECF No. 96 at 12.)

12   However, he does not allege that he had told any of the above defendants about his ailments, that

13   they were aware of plaintiff's medical chrono, or that they otherwise knew of and chose to

14   disregard plaintiff's medical condition.  Similarly, plaintiff fails to allege that these defendants

15   were even aware that plaintiff was freezing and could not use the wool blanket from September 7,

16   2007, to September 30, 2007.  In the absence of such factual allegations, plaintiff fails to state a

17   claim under the Eighth Amendment because he fails to show that defendants were subjectively

18   aware of his medical need.  See Farmer, 511 U.S. at 837.

19       With respect to the taking of his legal work by Brooks, Cobb, Doyle, and Hitchcock,

20   plaintiff fails to state a cognizable claim because he alleges facts insufficient to show that he

21   suffered any actual injury as a result of the deprivation.  Prisoners have a constitutional right to

22   meaningful access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith,

23   430 U.S. 817, 824-25 (1977).  The right of access is merely the right to bring to court a grievance

24   the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil

25   rights actions.  Lewis, 518 U.S. at 354.  Within this right to access the courts is the right for

26   prisoners to prepare legal documents without active interference from prison officials.  Id. at 350;

27   Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) ("[P]risoners have a right under the First

28   and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of

their confinement to conclusion without active interference by prison officials.").  However, to claim a violation of this right, a plaintiff must show that he has suffered an actual injury as a result of the alleged interference.  Lewis, 518 U.S. at 350.  In other words, he must be able to show that the deprivation has directly impacted the relevant litigation in a manner adverse to him.  Id. at 348 (defining "actual injury" as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.").  Here, plaintiff makes no such allegation; he merely states that he had his legal work taken from him and that he repeatedly asked for it back.  Plaintiff makes no showing that he had missed a filing deadline, had his case he was working on dismissed, or had suffered any other adverse consequences as a result of the officers taking his work.  Therefore, even when all of plaintiff's allegations in claim six are taken as true, he still fails to meet the actual injury requirement.  Accordingly, the court finds that plaintiff has failed to state a claim against Brooks, Cobb, Doyle, and Hitchcock in connection with their taking of his legal work.  For the same reasons, plaintiff also fails to state a claim against Cimino, Kalbach, and Rana for their refusal to return his legal work when he requested it.

Finally, plaintiff also fails to state a claim under the First Amendment for retaliation with regard to all of the defendants named in claim six.  Similar to most of the other claims plaintiff makes in his fourth amended complaint, he fails to allege facts in claim six that show a causal connection between the defendants' alleged actions and any protected activity that plaintiff may have engaged in.  See Watison, 668 F.3d at 1114.  Nor does he allege facts indicating that the defendants' respective actions lacked a legitimate correctional goal.  See Id.  Accordingly, plaintiff fails to state a First Amendment retaliation claim against any of the defendants named in claim six.

Based on the foregoing, the court finds that plaintiff fails to allege facts sufficient to state any claim in claim six of his fourth amended complaint.  Accordingly, the court dismisses claim six without leave to amend.

G. CLAIM SEVEN

In claim seven, plaintiff alleges that defendant Statti violated his First, Eighth, and Fourteenth Amendment rights by refusing to permit plaintiff to call witnesses and present

1   evidence at his October 17, 2007 disciplinary hearing.  (ECF No. 96 at 13-14.)  Plaintiff further

2   alleges that defendants Carter, Cobbs, Doyle, and Hitchcock deprived him of these same rights in

3   enforcing Statti's "retaliation tactics" against him, resulting in an unwarranted removal of

4   plaintiff's canteen and exercise yard rights and a taking of his legal work.  (Id. at 14.)  Defendants

5   concede that plaintiff sufficiently alleges a claim against Statti for a violation of his Fourteenth

6   Amendment right to procedural due process; however, they argue that plaintiff has failed to allege

7   facts sufficient to give rise to claims against Statti on the basis of the First or Eighth

8   Amendments.  (ECF No. 96 at 15.)  Additionally, defendants argue that plaintiff fails to allege

9   facts in claim seven sufficient for any cognizable claim against Carter, Cobb, Doyle, and

10  Hitchcock.  (Id.)  The court agrees with defendants' assertions.

11      With respect to Statti, plaintiff's allegations do not connect the refusal to permit plaintiff

12  to present witnesses or evidence during the hearing with plaintiff's exercise of activity protected

13  under the First Amendment.  See Watison, 668 F.3d at 1114.  Nor are there any alleged facts

14  showing that this refusal amounted to deliberate indifference; according to plaintiff's allegations,

15  the hearing dealt with a charge of assault and battery alleged to have been committed by plaintiff

16  and was unrelated to plaintiff's previous injuries or his medical appeals.  Accordingly, plaintiff's

17  claims against Statti based on the First and Eighth Amendments are dismissed to the extent they

18  are based on facts alleged in claim seven.

19      Similar to his allegations against Statti, plaintiff fails to allege that the actions of Carter,

20  Cobbs, Doyle, and Hitchcock were carried out in retaliation or in a manner that amounted to

21  deliberate indifference.  Plaintiff does not allege that these defendants removed his canteen and

22  exercise yard privileges or his legal papers in retaliation for plaintiff's participation in activity

23  protected under the First Amendment; neither does plaintiff allege facts showing that these

24  defendants used excessive force or neglected his medical needs in removing the legal documents

25  from his cell.  Accordingly, plaintiff fails to allege facts in claim seven sufficient for claims based

26  on the First or Eighth Amendments against these four defendants.  Furthermore, none of the

27  alleged facts point to these defendants acting in a way that denied plaintiff of his procedural due

28  process rights.  Plaintiff does not allege that any of these defendants assisted Statti in denying

1    plaintiff the ability to present evidence at his hearing or hindered his access to other procedural

2    protections; he merely alleges that these defendants carried out Statti's orders after the hearing

3    had already occurred and a determination had already been made.  These allegations, taken as

4    true, are insufficient to show a Fourteenth Amendment procedural due process violation.  See

5    Kentucky Dep't of Corrections, 490 U.S. at 459-60 (1989).  The court finds that plaintiff fails to

6    set forth facts in claim seven that give rise to any of the causes of action claimed against Carter,

7    Cobbs, Doyle, and Hitchcock.

8            H. CLAIM EIGHT

9            Plaintiff alleges in claim eight that, on September 7, 2007, defendant Statti ordered

10   defendants Brooks, Carter, Doyle, and Noyes to enter plaintiff's cell and confiscate plaintiff's

11   legal work concerning an active case he was working on.  (ECF No. 96 at 15.)  Plaintiff further

12   alleges that Brooks, Carter, Doyle, and Noyes carried out Statti's order, which denied plaintiff the

13   ability to present new evidence in the active case that would have exonerated him of his

14   conviction.  (Id.)  Additionally, plaintiff alleges that Statti forced him to sleep on the floor with a

15   wool blanket and refused to give him his dry skin lotion even though Statti knew of plaintiff's

16   medical chrono stating that he was allergic to wool and needed the lotion for a skin condition.

17   (Id.)  Defendants concede that these alleged facts give rise to claims against Statti based on the

18   First and Eighth Amendments.  (ECF No. 101 at 15.)  However, defendants argue that these

19   allegations fail to state any claim against Brooks, Carter, Doyle, or Noyes.  (Id.)  The court finds

20   defendants' position persuasive.

21           Construing plaintiff's allegations in claim eight liberally, it appears that he attempts to

22   bring a claim for denial of access to the courts.  As discussed above, prisoners have a right under

23   the First and Fourteenth Amendments to litigate claims challenging their sentences or the

24   conditions of their confinement without direct interference from prison officials.  Lewis, 518 U.S.

25   at 350; Silva, 658 F.3d at 1103.  Such claims may arise from the frustration or hindrance of "a

26   litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a

27   meritorious suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536

28   U.S. 403, 414 (2002).  In essence, "forward-looking" claims allege that "systemic official action

1    frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Id. at 413.

2    In these cases that have yet to be litigated, "the justification for recognizing that [forward-

3    looking] claim, is to place the plaintiff in a position to pursue a separate claim for relief once the

4    frustrating condition has been removed." Id.

5           "Where a prisoner asserts a backward-looking denial of access claim – one . . . seeking a

6    remedy for a lost opportunity to present a legal claim-he must show: 1) the loss of a

7    'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3)

8    a remedy that may be awarded as recompense but that is not otherwise available in a future suit."

9    Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher, 536 U.S. at 413-14,

10   overruled on other grounds, Hust v. Phillips, 129 S. Ct. 1036 (2009)).  In order to meet the

11   requisite actual injury showing, a plaintiff must plead facts alleging "a nonfrivolous legal claim

12   had been frustrated or was being impeded."  Lewis, 518 U.S. at 353; see also Christopher, 536

13   U.S. at 415.  "The complaint should 'state the underlying claim in accordance with Federal Rule

14   of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement

15   should describe any remedy available under the access claim and presently unique to it.'"

16   Gonzalez v. Diaz, No. 1:10-CV-01287-GBC PC, 2011 WL 2671535 (E.D. Cal. July 6, 2011)

17   (quoting Christopher, 536 U.S. at 417-18).

18          Here, plaintiff fails to allege facts sufficient to state an access to the courts claim against

19   Brooks, Carter, Doyle, or Noyes.  Based on the facts alleged, plaintiff's claim would have to rely

20   on a backwards-looking theory as his claim is based on defendants' past behavior, the destruction

21   of his legal documents, and the allegations do not show any ongoing impediments to plaintiff's

22   progress on the case. See Christopher, 536 U.S. at 414.  Plaintiff does allege facts sufficient to

23   show that the destroyed affidavits and witness confession may have led to a favorable outcome in

24   the case.  (See ECF No. 96 at 15 ("I had [sic] confession declaration from Deadra and Fatima

25   admitting to this [robbery] and this new discovery could've proved to the courts once and for all

26   that I never removed anything from Tammy Beasley's backpack.")).  However, plaintiff fails to

27   describe in detail any action that he was unable to pursue or that he suffered an adverse ruling as a

28   result of the defendants destroying these documents.  Thus, he fails to sufficiently allege the "loss

25

1    of a 'nonfrivolous' or 'arguable' underlying claim." Phillips, 477 F.3d at 1076.  Nor does

2    plaintiff allege any "remedy that may be awarded as recompense but that is not otherwise

3    available in a future suit."  Id.  Accordingly, plaintiff fails to state an access to the courts claim

4    against these defendants.[5]

5         Furthermore, with regard to a claim based on retaliation, plaintiff fails to allege facts

6    showing that Brooks, Carter, Doyle, or Noyes had a retaliatory motive for confiscating his legal

7    work.  Additionally, plaintiff fails to allege any facts showing that these defendants were

8    deliberately indifferent to his medical needs or that they denied him due process.  Accordingly,

9    plaintiff's claims against all defendants named in claim eight, other than Statti, are dismissed

10   without leave to amend.

11        I. CLAIM NINE

12        In claim nine, plaintiff alleges that defendant Jackson violated his First, Eighth, and

13   Fourteenth Amendment rights when she "cancelled and rejected all of [his] 602 appeals and staff

14   complaints from 9/3/07 and 10/17/07 thru [sic] 3/6/08."  (ECF No. 96 at 16.)  Additionally,

15   plaintiff alleges that his same rights were violated when Jackson refused to provide him copies of

16   documents he had requested on March 6, 2008.  (Id.)  Defendants contend that these allegations

17   fail to state any claim against Jackson.  (ECF No. 101 at 16.)  In particular, defendants argue that

18   plaintiff has no constitutional right to having his appeals processed.  (Id.)  For reasons discussed

19   below, the court agrees with defendants' argument.

20        Prisoners have no stand-alone due process rights related to the administrative grievance

21   process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334

22   F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a

23   specific grievance process).  Put another way, prison officials are not required under federal law

24

25   [5] Plaintiff also alleges that defendants Cimino, Kalbach, and Rana also "destroy[ed] any and all
     declaration and confession letters and photos" related to the active case.  (ECF No. 96 at 15.)
26   Defendants do not address these allegations against these defendants in their motion to dismiss.
     Nevertheless, the court finds that plaintiff also fails to state an access to the courts claim against
27   these defendants for the same reasons it finds plaintiff's claim against Brooks, Carter, Doyle, and
     Noyes deficient.
28

1   to process inmate grievances in a specific way or to respond to them in a favorable manner.

2   Because there is no right to any particular grievance process, plaintiff cannot state a cognizable

3   civil rights claim for a violation of his due process rights based on allegations that prison officials

4   ignored or failed to properly process grievances.  See, e.g., Wright v. Shannon, No. 1:05-cv-

5   01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb.2, 2010) (plaintiff's allegations that

6   prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the

7   First Amendment); Williams v. Cate, No. 1:09-cv-00468-OWW-YNP PC, 2009 WL 3789597, at

8   *6 (E.D. Cal. Nov.10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his

9   administrative claims.").

10      Here, plaintiff merely alleges that Jackson wrongfully rejected all of his administrative

11  grievances.  (ECF No. 96 at 16.)  There is nothing in the facts alleged by plaintiff to indicate that

12  Jackson hindered or prevented plaintiff from accessing the grievance process.  Because plaintiff

13  has no liberty interest in having his appeals processed or decided in a particular manner, this

14  allegation fails to state a claim under the Fourteenth Amendment's Due Process clause.  See

15  Ramirez, 334 F.3d at 860.  Similarly, the court finds that plaintiff fails to allege a cognizable

16  claim against Jackson on the basis of the First Amendment.  A cognizable claim under the First

17  Amendment does not arise when a prison official ignores or denies a prisoner's administrative

18  grievances.  See Wright v. Shannon, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5

19  (E.D. Cal. Feb. 2, 2010).  Finally, plaintiff alleges absolutely no facts suggesting that Jackson's

20  handling of his appeals or refusal to give plaintiff the requested documents amounted to an act of

21  deliberate indifference to plaintiff's medical needs under the Eighth Amendment.  Accordingly,

22  plaintiff fails to state a cognizable claim against Jackson.  Therefore, the court dismisses

23  plaintiff's claims against Jackson without leave to amend.

24  CONCLUSION

25      Based on the foregoing, the court grants defendants' motion to dismiss in part, and denies

26  it in part.  The court also finds that the deficiencies in plaintiff's fourth amended complaint cannot

27  be cured through amendment and that granting leave to amend would therefore be futile.  See

28  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988)

1    ("Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and

2    futility."); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987); Klamath-Lake Pharm. Ass'n v.

3    Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to

4    amend shall be freely given, the court does not have to allow futile amendments).  Plaintiff has

5    had ample opportunity to craft his complaint and cure any deficiencies in his factual allegations

6    and it highly unlikely that allowing for further amendments will result in any legally cognizable

7    claims beyond those already sufficiently alleged.  Accordingly, to the extent that plaintiff's claims

8    are dismissed, they are dismissed without leave to amend.

9                               PLAINTIFF'S MOTIONS

10   MOTION FOR FOURTEEN DAY EXTENSION OF TIME

11            On January 9, 2013, plaintiff filed a motion for a fourteen day extension of time to file an

12   opposition to defendants' motion to dismiss.  (ECF No. 107.)  Plaintiff filed his opposition on

13   January 14, 2013.  (See ECF No. 109.)  Accordingly, this motion is moot and will be denied.

14   MOTION REQUESTING COURT ORDER FOR LEGAL SUPPLIES

15            On January 14, 2013, plaintiff filed a motion requesting a court order that he be provided

16   weekly with specified legal supplies.  (ECF No. 109.)  For the reasons discussed below, this

17   motion is denied.

18            In Lewis v. Casey, 518 U.S. 343 (1996), the United States Supreme Court held that prison

19   inmates have a constitutionally protected right to access the courts to bring civil rights actions to

20   challenge their conditions of confinement and to bring challenges to their criminal convictions.

21   However, this right of access to the courts "guarantees no particular methodology but rather the

22   conferral of a capability -- the capability of bringing contemplated challenges to sentences or

23   conditions of confinement before the courts."  Id. at 356.  Plaintiff claims that "defendants'

24   coworkers" will not provide him with his "weekly supplies and legal copies," that he is out of

25   supplies, and that this is "preventing [him] from making any of [his] court orders [sic] legal

26   deadlines."  (ECF No. 109 at 1.)  Standing alone, these assertions are insufficient to show the

27   court why an order should issue.  Plaintiff makes no showing that the denial of the particular

28   supplies he requests makes him incapable of responding as needed to the developments of this

                                          28

1    case.  Moreover, based on the exhibits plaintiff attaches to his motion (see id. at 2-8), the

2    deprivation of supplies plaintiff complains of appears to the court to be temporary in nature and

3    appears to have been abated by the time of this order.  Accordingly, plaintiff's motion is denied.

4           Accordingly, IT IS HEREBY ORDERED that:

5      1.  Defendants' Motion to Dismiss is partially granted:

6           a.  All claims against defendants Brooks, Buhay, Carter, Christopherson, Cimino,

7               Cobb, Doyle, Hitchcock, Hutchinson, Jackson, Kalbach, Lynn, Noyes, Pena, Rana,

8               and Torres-Hazelton are DISMISSED WITHOUT LEAVE TO AMEND.

9           b.  Plaintiff's first, fifth, sixth, and ninth claims for relief are DISMISSED

10              WITHOUT LEAVE TO AMEND.

11          c.  Plaintiff's third claim for relief is DISMISSED WITHOUT LEAVE TO AMEND

12              to the extent that it is predicated on the First and Fourteenth Amendments.

13          d.  Plaintiff's fourth claim for relief is DISMISSED WITHOUT LEAVE TO

14              AMEND to the extent that it is predicated on the First and Fourteenth

15              Amendments against defendant French and DISMISSED WITHOUT LEAVE TO

16              AMEND in all respects with regard to all other defendants named therein.

17          e.  Plaintiff's seventh claim for relief is DISMISSED WITHOUT LEAVE TO

18              AMEND to the extent that it is predicated on the First and Eighth Amendments

19              against defendant Statti and DISMISSED WITHOUT LEAVE TO AMEND in all

20              respects with regard to all other defendants named therein.

21          f.  Plaintiff's eighth claim for relief is DISMISSED WITHOUT LEAVE TO

22              AMEND to the extent that it is predicated on the Fourteenth Amendment against

23              defendant Statti and DISMISSED WITHOUT LEAVE TO AMEND in all respects

24              with regard to all other defendants named therein.

25          g.  Defendants' motion to dismiss plaintiff's second claim for relief against defendant

26              Amero is DENIED to the extent that it is predicated on the Eighth Amendment.

27    ////

28    ////

1      2.  Plaintiff's motions for a fourteen day extension of time and for legal supplies are

2         DENIED.

3  Dated:  September 24, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE