UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT SOLOMON,<br><br>Plaintiff,<br><br>v.<br><br>T. FELKER, et al.,<br><br>Defendants. | No.  2:  08-cv-2544 KJN P<br><br><br>ORDER |

Introduction

      Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  The parties have consented to the jurisdiction of the undersigned.  (ECF Nos. 8, 41.)

      Pending before the court is defendants' motion for summary judgment filed September 19, 2014.  (ECF No. 134).  Defendants argue that they are entitled to qualified immunity.  On February 20, 2015, plaintiff filed his opposition and a statement of undisputed facts.  (ECF Nos. 145, 146.)  On February 27, 2015, defendants filed a reply.  (ECF No. 147.)

      For the reasons stated herein, defendants' summary judgment motion is granted with the exception of one issue noted below.

////

////

1

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

1    By contemporaneous notice provided on July 30, 2014, (ECF No. 22-2), plaintiff was

2   advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

3   Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*);

4   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5   Legal Standard for Qualified Immunity

6    In analyzing a claim of qualified immunity, a court must examine (1) whether the facts as

7   alleged, taken in the light most favorable to plaintiff, show that the defendant's conduct violated a

8   constitutional right, and (2) if a constitutional right was violated, whether, "in light of the specific

9   context of the case," the constitutional right was so clearly established that a reasonable official

10  would understand that what he or she was doing violated that right.  See Saucier v. Katz, 533 U.S.

11  194, 201–02 (2001).  If no constitutional right was violated, the inquiry ends and the defendant

12  prevails.  Saucier, 533 U.S. at 201.

13    To meet the "clearly established" requirement, "[t]he contours of the right must be

14  sufficiently clear that a reasonable official would understand that what he is doing violates that

15  right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  This requires defining the right

16  allegedly violated in a "particularized" sense that is "relevant" to the actual facts alleged.  Id.

17  "Because the focus is on whether the officer had fair notice that her conduct was unlawful,

18  reasonableness is judged against the backdrop of the law at the time of the conduct."  Brosseau v.

19  Haugen, 543 U.S. 194, 198 (2004).

20    Courts are not required to address the two inquiries in any particular order.  Rather, courts

21  may "exercise their sound discretion in deciding which of the two prongs of the qualified

22  immunity analysis should be addressed first in light of the circumstances in the particular case at

23  hand."  Pearson v. Callahan, 555 U.S. 223, 243 (2009).

24  Plaintiff's Claims

25    The court has previously addressed two motions to dismiss pursuant to Federal Rule of

26  Civil Procedure 12(b)(6).  (ECF Nos. 71, 111.)  This action now proceeds on plaintiff's fourth

27  amended complaint on the following claims as to defendants Amero, Brautigan, French, Hawks,

28  Oschner, Peery, Plainer, Santana, Schirmer, Statti, Ulbricht and Wright.  (ECF No. 96.)

1    *Claim Two—Alleged Violation of the Eighth Amendment by Defendant Amero*

2    Plaintiff alleges that on August 3, 2007, he was attacked by a group of inmates as he

3 walked across the yard.  (<u>Id.</u> at 4.)  Plaintiff alleges that officers responded to the incident by

4 using pepper spray and batons on plaintiff.  (<u>Id.</u> at 5.)

5    Plaintiff alleges that after the attack, he was placed in a holding cage in the Program

6 Office while awaiting medical attention.  (<u>Id.</u>)  Dr. Dudley allegedly gave medical attention to the

7 two attacker inmates who were also present in the office; however, he did not give plaintiff any

8 medical attention.  (<u>Id.</u> at 5-6.)  Plaintiff alleges that Dr. Dudley ordered x-rays for plaintiff's

9 attackers because they broke their hands or wrists.  (<u>Id.</u> at 6.)  When plaintiff complained about

10 the lack of treatment, defendant Amero "ordered everybody out of the program office."  (<u>Id.</u>)

11 Neither Dr. Dudley nor the registered nurse who were also present "were allowed to examine

12 [plaintiff] or complete a C.D.C.R. 7219 Form," which is used to describe whether an inmate is

13 suffering from any injuries.  (<u>Id.</u>)  Plaintiff was not "allowed to decontaminate for hours" and

14 "was sprayed, bleeding, bruised and was having problems to breath [sic]" because he is a chronic

15 asthmatic.  (<u>Id.</u>)

16    *Claim Three—Alleged Violation of Eighth Amendment by Defendants Amero, Brautigan,*

17 *Hawk, Oschner, Peery, Plainer, Santana, Schirmer, Ulbricht, Wright*

18    After defendant Amero ordered everyone out of the Program Office, defendant Santana

19 cuffed plaintiff's hands behind his back through a slot in plaintiff's holding cage.  (<u>Id.</u>)

20 Defendants Hawk, Oschner, Peery, Plainer, Schirmer, Ulbricht and Wright were also present in

21 the office at this time   (<u>Id.</u>)  After the cage was opened, plaintiff allegedly was held down by

22 defendant Santana and "c/o Brautigan took turns beating [plaintiff]," punching him in his "lower

23 back, rips [sic], legs, thighs and face."  (<u>Id.</u>)  One of the officers "busted [plaintiff's] eyes with the

24 ring he had on."  (<u>Id.</u>)  While plaintiff was being assaulted, defendant Amero "yelled at the c/o

25 officer who busted [plaintiff's] eyes to get out of there."  (<u>Id.</u> at 7.)  After this incident, plaintiff

26 allegedly was provided with no medical attention.  (<u>Id.</u>)

27 ////

28 ////

1   *Claim Four—Alleged Violation of Eighth Amendment by Defendant French*

2    From August 3, 2007, to August 14, 2007, plaintiff allegedly submitted medical slips

3   seeking care for the injuries he sustained on August 3, 2007.  (Id.)  Additionally, he made verbal

4   requests.  (Id.)  As a result of these requests and slips, on August 6, 2007, plaintiff was taken to

5   the infirmary and given a urine test by a registered nurse to test for any internal bleeding.  (Id.)

6   The registered nurse "called the doctor on call and recommended that [plaintiff] be rushed to the

7   outside hospital in Lassen County."  (Id.)  However, the unidentified "doctor on call" allegedly

8   refused the recommendation, stating that there was not enough money or staff to transport

9   plaintiff to the hospital.  (Id.)

10    Plaintiff was later examined on August 14, 2007 by defendant Dr. French regarding a

11   medical grievance for dry skin lotion plaintiff had filed in June or July of 2007, which was

12   unrelated to his August 3, 2007 injuries.  (Id.)  During this examination, defendant Dr. French

13   allegedly refused to treat plaintiff for the injuries he had sustained on August 3, 2007, and only

14   offered to address plaintiff's dry skin grievance.  (Id.)

15   *Claim Seven—Alleged Violation of Fourteenth Amendment by Defendant Statti*

16    Plaintiff alleges that defendant Statti refused to permit plaintiff to call witnesses and

17   present evidence at his October 17, 2007 disciplinary hearing.  (Id. at 13-14.)

18   *Claim Eight—Alleged Violation of First and Eighth Amendments by Defendant Statti*

19    Plaintiff alleges that defendant Statti violated plaintiff's right to access the courts on

20   September 7, 2007, when he ordered the destruction of plaintiff's "legal work and personal

21   property" regarding two active court cases plaintiff had been working on.  (Id. at 15)  Plaintiff

22   identifies these cases as case nos. 07F06367 and 07F03358.  (Id.)

23    Plaintiff also alleges that defendant Statti forced him to sleep on the floor with wool

24   blankets and refused to give plaintiff cosmetics and dry skin lotion even though defendant Statti

25   knew that plaintiff had a medical chrono that stated that he was allergic to wool and that he had a

26   dry skin disease called "incema [sic]."  (Id.)

27   ////

28   ////

6

Discussion -- Claim Two

Plaintiff alleges that defendant Amero denied him medical care following the assault by the other inmates on August 3, 2007.

*Legal Standard*

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006 ) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond.  Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010).  "Deliberate indifference is a high legal standard."  Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

*Analysis*

Defendants argue that defendant Amero did not deny or otherwise interfere with plaintiff's receipt of medical care following the assault by other inmates on August 3, 2007. Defendants state that following the assault, plaintiff was medically evaluated by Nurse Lipton.  A copy of the CDCR 7219 form prepared by Nurse Lipton following the attack is attached as an exhibit to defendants' summary judgment motion.  (ECF No. 134-5 at 9.)  In this form, Nurse Lipton wrote that the incident occurred at 11:00 and that Nurse Lipton examined plaintiff at 11:10.  (Id.)  The form describes plaintiff's injuries as an abrasion/scratch on his right knee and left elbow, a reddened area around plaintiff's right eye and pain in his head.  (Id.)  The form also states that plaintiff was not exposed to pepper spray.  (Id.)

1    As noted above, in the fourth amended complaint, plaintiff alleges that he was not

2    examined by a nurse following the attack by the other inmates and that no CDCR 7219 form was

3    prepared.  However, in his opposition, plaintiff does not clearly address defendants' argument

4    that defendant Amero did not interfere with his receipt of medical care following the August 3,

5    2007 assault.  Instead, plaintiff argues that the CDCR 7219 form, reflecting minimal injuries

6    following the attack, is evidence that he received more serious injuries following the assault by

7    defendants, alleged in claim three.

8    Because plaintiff does not dispute that he received medical care following the assault, as

9    demonstrated by the CDCR 7219 form prepared by Nurse Lipton, defendant Amero is granted

10   summary judgment to this claim.[1]

11   Because the undersigned finds that defendant Amero did not violate plaintiff's

12   constitutional rights, the undersigned need not address the second prong of the qualified

13   immunity test.

14   Discussion—Claim Three

15   In claim three, plaintiff alleges that on August 3, 2007, defendants Santana and Brautigan

16   beat him in the Program Office.  Plaintiff alleges that defendants Amero, Hawk, Oschner, Peery,

17   Plainer, Schirmer, Ulbricht and Wright were present during the beating and failed to intervene.

18   Plaintiff also alleges that defendants failed to provide him with medical care for the injuries he

19   received as a result of this beating.

20   *Legal Standard for Claim Alleging Excessive Force*

21   The use of excessive force by a prison official violates the Eighth Amendment.  Hudson v.

22   McMillian, 503 U.S. 1 (1992).  Determining whether there has been an Eighth Amendment

23   violation turns upon "'whether force was applied in a good faith effort to maintain or restore

24   discipline or maliciously and sadistically for the very purpose of causing harm.'"  Id. at 6

25   (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)).

26
27
28

---

[1]   The undersigned also observes that plaintiff's allegation that the inmates who attacked him were provided with x-rays following the incident is contradicted by the medical records submitted by defendants.  These records indicate that the two inmates who attacked plaintiff suffered minor injuries and were medically cleared for administrative segregation.  (ECF No. 134-15 at 20-21.)

1    To determine whether the use of force violates the Eighth Amendment, the court should

2    consider the "extent of injury ..., the need for application of force, the relationship between that

3    need and the amount of force used, the threat 'reasonably perceived by the responsible officials,'

4    and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7

5    (quoting Whitley, 475 U.S. at 321); see also LeMaire v. Maass, 12 F.3d 1444, 1454 (9th Cir.

6    1993) (considering need for application of measure or sanction complained of, relationship

7    between need and measure or sanction used, extent of any injury inflicted and extent of

8    surrounding threat to safety of staff and inmates); Spain v. Procunier, 600 F.2d 189, 195 (9th Cir.

9    1979) (guards may use force only in proportion to need in each situation).

10    *Analysis—Excessive Force*

11    Defendants move for summary judgment on grounds that defendants Santana and

12    Brautigan did not assault plaintiff on August 3, 2007.  In support of this claim, defendants cite the

13    declaration of defendant Santana who states that he has no recollection of plaintiff being attacked

14    on August 3, 2007, but that at 1:05 p.m. he served plaintiff with a copy of the lock-up order

15    issued after the yard incident which provided the reasons plaintiff was being placed in

16    administrative segregation.  (ECF No. 134-9 at 1.)  Defendant Santana has no recollection of

17    seeing plaintiff in the Program Office on August 3, 2007.  (Id. at 2.)  Defendant Santana also

18    states that he did not, nor did he see anyone, use excessive force against plaintiff on that date.

19    (Id.)

20    In his declaration, defendant Brautigan states that he has no recollection of the August 3,

21    2007 assault on plaintiff by the other inmates.  (ECF No. 134-4 at 1.)  He also states that he has

22    no recollection of seeing plaintiff in the Program Office on August 3, 2007.  (Id. at 2.)  Defendant

23    Brautigan states that he did not, nor did he see anyone, use excessive force against plaintiff on

24    that date.  (Id.)

25    In their declarations, defendants Amero, Hawks, Oschner, Peery, Plainer, Schirmer,

26    Ulbricht and Wright also state that they did not see any staff use force or pepper spray on August

27    3, 2007.  (ECF Nos. 134-3 at 1-3; 134-5 at 1-2; 134-6 at 1-2; 134-7 at 1-2; 134-8 at 1-2;  134-10

28    at 1-2; 134-12 at 1-2; 134-14 at 1-2.)  These defendants also state that they have no recollection of

1    seeing plaintiff in the Program Office on that date.  (ECF No. 134-3 at 2; 134-5 at 2; 134-6 at 2;

2    134-7 at 2; 134-8 at 2;134-10 at 2; 134-12 at 2; 134-14 at 2.)

3        Defendants also argue that plaintiff had no injuries consistent with being beaten and

4    pepper sprayed, as alleged.  While plaintiff clearly alleges that he was beaten, the undersigned

5    does not find that plaintiff is alleging that defendants pepper sprayed him while he was in the

6    Program Office.

7        Defendants argue that plaintiff was seen by mental health staff on August 4, 2007, and

8    made no mention that he required medical attention or did staff note any injuries.  (See ECF No.

9    134-15 at 23.)  Defendants also argue that plaintiff's injuries as reflected in his medical records

10    from August 4, 2007, when he was taken to the prison's emergency room, also are inconsistent

11    with having been beaten.

12        The August 4, 2007 entry in plaintiff's records by staff at the prison emergency room state

13    that plaintiff reported that he had passed out several times since he "got jumped the other day."

14    (ECF No. 134-15 at 25.)  Plaintiff claimed that he had passed out five times, felt dizzy and his

15    head hurt.  (Id.)  Plaintiff stated that he had not yet been seen by medical staff to evaluate the

16    injuries he suffered as a result of the altercation on D yard.  (Id.)  Medical staff wrote that plaintiff

17    had unlabored breathing, a steady gait, bruised eyes, abrasions behind the right ear lobe and on

18    both knees, swelling on the upper right arm and abrasions on the right elbow.  (Id.)  Plaintiff was

19    monitored for approximately two hours then released.  (Id.)  The emergency room record

20    indicates that plaintiff did not pass out during the time he was monitored.  (Id.)

21        In the CDCR 7219 report prepared shortly after the assault, Nurse Lipton wrote that

22    plaintiff had a reddened area on his right eye, pain behind his right ear, and abrasions on his right

23    knee and right elbow.  (Id. at 19.)  The only difference between the descriptions of plaintiff's

24    injuries between these two reports is that the emergency room report noted the following

25    additional injuries:  plaintiff's left eye was also bruised, plaintiff's left knee had abrasions and his

26    upper right arm was swelling.  Based on plaintiff's description of the alleged beating by

27    correctional officers, it is difficult to conceive that if such a beating occurred that these were the

28    only additional injuries plaintiff suffered as a result of the beating.

1    Moreover, plaintiff has submitted no medical records supporting his claim that one of the

2    officers "busted" his eye with the ring he was wearing during the beating.  (ECF No. 96 at 6.)

3    While the emergency room record states that plaintiff's left eye was bruised, there is no evidence

4    that either eye was "busted by a ring," such as a medical record noting a laceration near plaintiff's

5    eye.  In addition, there are no medical records showing any bruises to plaintiff's lower back, ribs,

6    legs or thighs, areas of his body which plaintiff claims defendants beat.  The undersigned also

7    notes that the emergency room record states that plaintiff complained only of injuries caused by

8    the attack by the inmates, and did not mention any attack by defendants.  (ECF No. 134-15 at 25.)

9    To overcome a motion for summary judgment, the nonmoving party "must come forward

10   with more persuasive evidence than would otherwise be necessary when the factual context

11   makes the non-moving party's claim implausible."  British Motor Car Distributors, Ltd v. San

12   Francisco Automotive Indus. Welfare Fund, 882 F.2d 371, 374 (9th Cir. 1989).  The factual

13   context of plaintiff's claim of excessive force is implausible because the injuries described in

14   plaintiff's medical records do not support his claim that he was beaten.  In addition, plaintiff did

15   not complain of any injuries caused by the alleged beating when he saw emergency room staff on

16   May 4, 2007.

17   The only evidence offered by plaintiff in support of his excessive force claim is his

18   allegations in his verified fourth amended complaint.  Because of the implausibility of plaintiff's

19   excessive force claim, these allegations are not sufficient to overcome defendants' summary

20   judgment motion.  Accordingly, all defendants named in connection with plaintiff's excessive

21   force claim are granted summary judgment.  See also Scott v. Harris, 550 U.S. 372, 380 (2007)

22   (citation and quotation marks omitted) ("When opposing parties tell two different stories, one of

23   which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

24   should not adopt that version of the facts for purposes of ruling on a motion for summary

25   judgment.").

26   Because the undersigned finds that defendants did not violate plaintiff's constitutional

27   rights, there is no need to address the second prong of the qualified immunity test.

28   ////

1      *Analysis—Failure to Provide Medical Care*

2          Because plaintiff has failed to demonstrate that defendants used excessive force, his claim

3    that they failed to provide him with medical care for the injuries he suffered as a result of the

4    alleged beating also fails.  Because the undersigned finds that defendants did not violate

5    plaintiff's constitutional rights, there is no need to address the second prong of the qualified

6    immunity test.

7    Discussion – Claim Four

8          Plaintiff alleges that defendant French provided him with inadequate medical care on

9    August 14, 2007, by failing to treat plaintiff for the injuries he sustained on August 3, 2007.

10         Defendants argue that defendant French, who now goes by the name "Weaver," did not

11   act with deliberate indifference to plaintiff's serious medical needs.  In support of this argument,

12   defendants cite the declaration of defendant French/Weaver:

13
14
> 1.  I am a licensed Nurse Practitioner, and I worked at High Desert
> State Prison ("HDSP") in Susanville, California from 2006 to 2010.

15
16
17
> 2.  As a Nurse Practitioner at HDSP, I provided primary medical
> care to the inmates, conducted physical examinations, provided
> necessary treatment, prescribed medication, interpreted test results,
> and provided educational and preventive information to the
> inmates.  I also responded to inmate grievances (602) concerning
> their medical care at the prison.

18
19
20
21
22
23
24
> 3.  Before seeing an inmate in connection with a 602, my customary
> practice was to review the grievance and the inmate's medical file
> to familiarize myself with his medical history concerning the
> symptoms or conditions of which he was complaining.  I then sat
> down with the inmate, listened to his complaints, and addressed
> them.  If the inmate raised other issues or conditions that were not
> raised in the grievance, I inquired about the symptoms to determine
> if the newly-raised condition was an urgent matter that required
> immediate medical attention.  If it was urgent, I addressed and
> treated the condition.  If it was not an urgent matter, I either advised
> the inmate to submit a request for medical treatment or I ordered
> that the inmate be scheduled for an appointment.

25
26
> 4.  On August 14, 2007, I saw inmate Solomon (P-17188) in the
> Chronic Care clinic in connection with a 602 he filed concerning
> his back pain, dry skin and other conditions.

27
28
> 5.  During the visit, I followed my usual practice and asked
> Solomon about his complaints of pain and other conditions
> mentioned in his 602.  He informed me that he had back pain, left
> wrist pain, and that his left hand was going numb.  He also

1
2
3
4
5
6
mentioned being involved in an altercation on August 3, 2007.  I conducted a physical examination of Solomon.  I checked his eyes, nose, throat, ears, heart, lungs, and extremities – all were normal.  He had full range of motion of his neck and I saw no bruising (ecchymosis).  I noted that he had dry skin.  His upper and lower extremities showed muscle hypertrophy, meaning he had good muscle tone consistent with that of a body builder.  He had full strength of his extremities, and he was negative for Tinel's test (an exam used to check for carpal tunnel).  I also performed a neurological (Romberg's) test of Solomon, which was normal.

7
8
9
10
11
12
6.  Based on my examination of Solomon, I prescribed him lotion for his dry skin, referred him to physical therapy for his complaints of weakness to his back, legs and left wrist, and I scheduled him for a follow-up appointment in the Chronic Care clinic.  I did not order x-rays or other imaging study because, given Solomon's range of motion and strength exhibited during his musculoskeletal exam, such studies were not medically indicated.  Although Solomon complained of back, leg, and wrist pain, I saw that he had a prescription for Ibuprofen, which he was allowed to keep on his person or cell.  Stronger pain medication was not medically necessary based on my examination of him, and I concluded that Ibuprofen was sufficient to control his pain.

13
14
15
7.  During my examination of Solomon on August 14, 2007, I did not see any bruises, welts or other injury on him.  If I had seen an injury or signs of Solomon being injured, I would have documented the injury or condition and provided the necessary treatment.

16
(ECF No. 134-13 at 1-3.)

17
18
19
20
21
Defendants also provided medical records showing that on August 14, 2007, plaintiff was also seen by Nurse Punt.  (ECF 134-15 at 37.)  Nurse Punt's records show that plaintiff's "chief complaint" was low back pain caused by the May 3, 2007 assault by other inmates.  (Id.)  Nurse Punt's notes state that plaintiff also complained of joint pain and that he was prescribed Tylenol.  (Id.)  Nurse Punt's notes do not state that plaintiff suffered any other injuries.  (Id.)

22
23
24
25
26
27
28
In his unverified opposition, plaintiff argues that defendant French only talked to him on August 14, 2007.  (ECF No. 145 at 3.)  Plaintiff argues that defendant French did not examine him and that defendants submitted false evidence.  (Id.)  A party cannot create a genuine issue of material fact merely by making assertions in unverified points and authorities.  Fed. R. Civ. P. 56(c); Helmich v.Kennedy, 796 F.2d 1441, 1443 (11th Cir. 1986) (statements in unverified brief not competent evidence); cf. Johnson v. Meltzer, 134 F.3d 1393, 1399 (9th Cir. 1998) (statements in verified opposition to summary judgment found to be competent evidence).

1    However, in the verified fourth amended complaint, plaintiff alleges that defendant

2   French/Weaver failed to treat him for the injuries he suffered on August 3, 2007, when she saw

3   him on August 14, 2007.  A verified complaint may be used as an affidavit opposing summary

4   judgment if it is based on personal knowledge and sets forth specific admissible facts.  See Jones

5   v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an affidavit

6   opposing summary judgment if it is based on personal knowledge and sets forth specific facts

7   admissible in evidence).

8    Taking the facts in the light most favorable to plaintiff, on August 14, 2007 defendant

9   French did not treat plaintiff for the injuries he suffered on August 3, 2007.  However, the record

10   demonstrates that plaintiff was seen by Nurse Punt on August 14, 2007, who treated plaintiff for

11   the injuries he suffered on August 3, 2007.

12    Because plaintiff was treated for his injuries by Nurse Punt, plaintiff essentially claims

13   that defendant French/Weaver delayed his receipt of treatment for these injuries.  A delay in

14   treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was

15   harmful.  See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), rev'd on other grounds,

16   WMX Technologies, Inc. v. Miller, 104 F.3d 133 (9th Cir. 1997); Shapley v. Nevada Bd. of State

17   Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  While the harm caused by delay need not

18   necessarily be "substantial," McGuckin, 974 F.2d at 1060 & n.2, the Eighth Amendment is

19   violated if "delays occurred to patients with problems so severe that delays would cause

20   significant harm and that Defendants should have known this to be the case."  Hallett v. Morgan,

21   296 F.3d 732, 746 (9th Cir. 2002).

22    Because Nurse Punt treated plaintiff for his injuries on the same day that defendant

23   French/Weaver allegedly denied him treatment, plaintiff suffered no harm as a result of the

24   alleged delay in treatment.  Accordingly, defendant French/Weaver is entitled to summary

25   judgment as to this claim.[2]

26   ////

27

28

---

[2]   The treatment plaintiff received from Nurse Punt was virtually the same treatment defendant French/Weaver stated that she provided to plaintiff.

1   Because the undersigned finds that defendant French/Weaver did not violate plaintiff's

2   constitutional rights, the undersigned need not address the second prong of the qualified

3   immunity test.

4   Discussion –Claim Seven

5   Plaintiff alleges that defendant Statti refused to permit plaintiff to call witnesses and

6   present evidence at his October 17, 2007 disciplinary hearing.

7   *Legal Standard*

8   Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply

9   of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S.

10   539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural

11   requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between

12   the time the prisoner receives written notice and the time of the hearing, so that the prisoner may

13   prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

14   reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense,

15   when permitting him to do so would not be unduly hazardous to institutional safety or

16   correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the

17   issues presented are legally complex. Id. at 563–71.

18   *Analysis*

19   Defendants move for summary judgment as to this claim on grounds that defendant Statti

20   was not present at the hearing, nor was he involved in the disciplinary proceedings or findings.

21   Defendants further argue that at the hearing, plaintiff conceded that his witnesses had no

22   additional information to provide. The undersigned sets forth defendants' evidence in support of

23   these arguments herein.

24   In his declaration, defendant Statti states that he did not participate in plaintiff's

25   disciplinary hearing:

26          9.   Solomon further alleges that I denied his due-process rights
    during the disciplinary proceedings arising from his battery on an
27   officer on September 7, 2007. This is not true. I was not involved
    in Solomon's disciplinary proceedings in any way. The Senior
28   Hearing Officer (SHO), at the October 17, 2007 disciplinary

hearing, was Lieutenant McClellan.   Had I been involved in Solomon's disciplinary action, my name or signature would appear on Rules Violation Report No. ASU-07-09-003.   I have reviewed this disciplinary report, and my name or signature does not appear on it.

10.   Although I was regularly assigned as a Hearing Lieutenant, I did not have the authority to tell, nor did I tell, Lieutenant McClellan how to proceed with the disciplinary hearing regarding Solomon.   In addition, I did not have the authority to determine which witnesses Solomon was allowed to call or what evidence was to be considered that led to Solomon's finding of guilt in Rules Violation Report No. ASU-07-09-003.

(ECF No. 134-11 at 3.)

In support of their argument that plaintiff conceded that his witnesses had no additional information, defendants cite the Rules Violation Report charging plaintiff with battery on a peace officer.  (ECF No. 135-15 at 64.)  The report describes plaintiff's offense as follows:

On Friday, September 7, 2007 at approximately 0900 hours while performing my duties as D7 floor #2.  I was standing in front of cell D7-230, performing unclothed body search on inmate SOLOMON P-17188, D7-230.  As I was inspecting his ad-seg soft shoes, inmate SOLOMON attempted to grab the shoes away from me and in the process grabbing my left hand.  I was able to close and lock the security port.  I then proceeded to the ASU Sergeant/Lieutenant office and informed ASU Sgt. Audette of what had occurred.  At approximately 0915 hours, I was medically cleared by RN Shaw. This ends my involvement in this incident.

(Id.)

With respect to plaintiff's request for witnesses, the report states that plaintiff was assigned an investigative employee.  (Id. at 66.)  The report goes on to state that plaintiff stated that the witness statements in the investigative employee report were adequate:

Inmate SOLOMON was given an opportunity to request the presence of witnesses at this hearing at the time he was given his copy of the CDC 115-A.  According to the CDC 115-A and I.E. report, inmate SOLOMON did request the presence of witnesses. Inmate SOLOMON requested that Officer Look, Inmate Smith, P-29527, Inmate Stewart, T-37367, and inmate McClough who lives in cell D7-118, be present at this hearing.

The SHO pointed out to inmate SOLOMON that all these witnesses statements were contained within the I.E. report, and asked if SOLOMON had anything to add to the witnesses statements. SOLOMON stated no, he had nothing further to add to the written witness statements.  This SHO then asked inmate SOLOMON what

16

additional information he thought any of the requested witnesses may be able to add to the I.E. report.  Inmate SOLOMON then stated that the contents of the I.E. report was adequate.

(Id. at 66-67.)

The disciplinary report contains the statements of plaintiff's witnesses.  (Id. at 70-71.)

In his unverified opposition, plaintiff claims that defendant Statti conducted the disciplinary hearing with Lieutenant McClellan.  (ECF No. 145 at 4.)  Plaintiff argues that he was denied his right to call three inmate witnesses who "seen everything."  (Id. at 5.)

Plaintiff's claim in his verified fourth amended complaint that defendant Statti refused his request to call witnesses and present evidence is sufficient to create a genuine dispute of fact as to whether defendant Statti oversaw the disciplinary hearing.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence).

However, plaintiff has not met his burden of establishing that a genuine issue of material fact exists as to whether defendant Statti denied his request to call witnesses or to present evidence.  While defendants' summary judgment motion does not directly address plaintiff's claim that he was denied his right to present evidence, plaintiff has not identified any evidence that he was allegedly not allowed to present.  Plaintiff has also failed to address defendants' argument that, at the hearing, plaintiff withdrew his request to call the three inmates as witnesses, conceding that their statements in the investigative employee reports were adequate.  Moreover, plaintiff does not address what more information these inmate witnesses could have added to their statements made to the investigative employee had they testified.  For these reasons, defendant Statti is granted summary judgment as to this claim.

Because the undersigned finds that defendant Stattis did not violate plaintiff's constitutional rights, there is no need to address the second prong of the qualified immunity test.

Discussion – Claim Eight

Claim eight includes two separate claims against defendant Statti which are addressed herein.

////

17

1    *Eighth Amendment*

2         Plaintiff alleges that defendant Statti made plaintiff sleep on the floor with a wool blanket

3    and refused to give plaintiff cosmetics and dry skin lotion even though defendant knew that

4    plaintiff was allergic to wool and had "incema" (eczema).

5         Defendants move for summary judgment as to this claim on grounds that plaintiff's dry-

6    skin condition does not rise to the level of an objectively serious medical condition.  In support of

7    this claim, defendants cite several cases:  Sledge v. Kooi, 564 F.3d 105, 107 (2d. Cir. 2009) (per

8    curiam) (no showing eczema was a serious medical need); Johnson v. Sullivan, 2010 WL

9    2850787, *2 (E.D. Cal. 2010) (skin condition did not qualify as serious medical need when there

10   was no suggestion skin condition affected inmate's activities or caused him substantial pain);

11   Witherspoon v. Africa, 2010 WL 4183508, * 2 (D. Md. 2010) (dry skin and rashes do not

12   comprise serious medical problems); Thompson v. Carlson, 2010 WL 3584409, * 6 (N.D.N.Y.)

13   ("Plaintiff's ... dry, cracked and itchy skin ... do[es] not meet the objective standards of a 'serious'

14   medical condition."); Henderson v. Gordineer, 2007 WL 840273, *5 (D.S.C. 2007) (dry skin

15   without more was not a serious medical need).

16        Defendants further argue that even if the court determines that plaintiff's skin condition

17   was objectively serious, his claim fails because defendant Statti did not know that plaintiff was

18   allergic to wool or that he was suffering any adverse effects from having a wool blanket.  In

19   support of this claim, defendants cite defendant Statti's declaration which states, in relevant part,

20           8.  Solomon also alleges that on September 7, 2007, he was given a
    wool blanket despite having a documented allergy to wool.  I did

21       not know that Solomon had an allergy to wool, and I do not recall
    Solomon ever complaining to me that he was allergic to wool or

22       that he was given a wool blanket.  Had Solomon complained to me
    or had such information come to my attention, I would have

23       followed my usual practice and contacted medical staff to confirm
    his allergy.  Once confirmed, I would have taken corrective action

24       and provided Solomon with a cotton blanket.

25   (ECF No. 134-11 at 2.)

26        In his unverified opposition, plaintiff argues that defendant Statti clearly saw the medical

27   chronos on his cell door stating that he was allergic to wool and must have cotton blankets.  (ECF

28   No. 145 at 4.)  Plaintiff argues that defendant also had to have seen this information in the H.U.

18

Logbook.  (Id.)  A party cannot create a genuine issue of material fact merely by making

assertions in unverified points and authorities.  Fed. R. Civ. P. 56(c); Helmich v.Kennedy, 796

F.2d 1441, 1443 (11th Cir. 1986) (statements in unverified brief not competent evidence); cf.

Johnson v. Meltzer, 134 F.3d 1393, 1399 (9th Cir. 1998) (statements in verified opposition to

summary judgment found to be competent evidence).  Accordingly, the undersigned finds that

plaintiff has not met his burden of establishing disputed material facts as to whether defendant

Statti had knowledge of plaintiff's alleged wool allergy.  For this reason, defendant Statti should

be granted summary judgment as to the claim that he made plaintiff sleep with a wool blanket

despite knowing that plaintiff was allergic to wool.

Plaintiff's claim that he suffered from eczema and that defendant failed to give him lotion

for this condition is separate from his claim alleging that he was allergic to wool.  Defendant

Statti's declaration does not address whether he had knowledge that plaintiff suffered from

eczema.  However, by arguing that plaintiff's eczema did not constitute a serious medical need,

defendants have shifted the burden to plaintiff to demonstrate that his eczema constituted a

serious medical need.

Several courts have found, based on the facts of those cases, that eczema constituted a

serious medical need.  See McKeithan v. Beard, 322 F.App'x 194, 198 (3d Cir. 2009) ("Although

mere 'dry skin' [caused by eczema] may fall short of a serious medical condition," skin that "was

so cracked and dry from his condition that it bled and left stains on his shirt" are sufficient to

allege a serious medical condition); McKeithan v. Iannuzzi, 2011 WL 6782305, at *6 (M.D. Pa.

2011) ("[E]czema can be a serious medical condition when the skin is so cracked and dry that it

bleeds."); Walker v. Cal. Dep't of Corrs. & Rehab., 2011 WL 5825929, at *4 (E.D. Cal. 2011)

("Plaintiff has sufficiently shown a serious medical need, based on allegations that she suffered

from eczema, with open sores and rashes developing all over her body, causing pain, unbearable

itching, and elevated blood pressure.").

In the instant case, plaintiff has provided no evidence that his eczema constituted a serious

medical need such that the failure to provide plaintiff with lotion would constitute deliberate

indifference.  Plaintiff's alleged need for skin lotion does not alone demonstrate that his eczema

19

1   constituted a serious medical need.   For this reason, defendant Statti is granted summary

2   judgment as to this claim.

3        Because the undersigned finds that defendant Statti did not violate plaintiff's

4   constitutional rights, there is no need to address the second prong of the qualified immunity test.

5        However, defendants do not address plaintiff's claim that defendant Statti made him sleep

6   on the floor. [3] Accordingly, this claim survives summary judgment.  See Thomas v. Baca, 514

7   F.Supp.2d 1201, 1217 (C.D. Cal. 2007) (noting that forcing inmates to sleep on the floor

8   generally violates the Eighth Amendment) (collecting cases).

9        *Access to the Courts*

10        Plaintiff alleges that defendant Statti violated plaintiff's right to access the courts on

11   September 7, 2007, when he ordered the destruction of plaintiff's "legal work and personal

12   property" regarding two active court cases plaintiff allegedly had been working on.  Plaintiff

13   identifies these cases as case nos. 07-F06367 and 07-F03358.  (ECF No. 96 at 15.)

14        Prisoners have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S.

15   817, 828 (1977).  Prisoners also have a right "to litigate claims challenging their sentences or the

16   conditions of their confinement to conclusion without active interference by prison officials."

17   Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011).  However, an inmate alleging a

18   violation of this right must show that he suffered an actual injury.  Lewis v. Casey, 518 U.S. 343,

19   349–51 (1996).  That is, plaintiff must allege that the deprivation actually injured or impaired his

20   litigation efforts, in that the defendant hindered his efforts to bring, or caused him to lose, an

21   actionable claim challenging his criminal sentence or conditions of confinement.  See id. at 351;

22   Christopher v. Harbury, 536 U.S. 403, 412–15 (2002).

23        Defendants move for summary judgment as to this claim on grounds that defendant Statti

24   did not order staff to destroy or discard plaintiff's legal property.  Defendants further argue that

25   the two cases cited by plaintiff were denied before his property was allegedly destroyed.  The

26   undersigned summarizes defendants' evidence in support of these arguments herein.

27

28   [3]   The September 24, 2013 order addressing defendants' second motion to dismiss described
     claim eight as alleging that "Statti forced him to sleep on the floor..."  (ECF No. 111 at 8, 24.)

In his declaration, defendant Statti states that he did not destroy plaintiff's legal property:

> 1.   In September 2007, I was regularly assigned as the Hearing Lieutenant on Facility D at High Desert State Prison (HDSP).  As the Hearing Lieutenant, I was primarily responsible for adjudicating rule violation reports, and I was not responsible for the supervision of the individual housing units.  On occasion, and when requested, I would assume the position of Acting Facility Captain.
>
> 2.   On September 7, 2007, inmate Solomon (P-17188) committed battery on an officer in the Administrative Segregation Unit.  Although I have no recollection of this incident, if I was Acting Facility Captain, I would have been notified of this incident.
>
> 3.   Management Control Status (MCS) is when an inmate's property is temporarily confiscated, and he is limited to having a few specific items in his possession.  I have no recollection if, on September 7, 2007, I gave the order to place Solomon on MCS.
>
> 4.   A CDC 128-B General Chrono, ordering Solomon's placement on MCS, was typed up for my signature, but I did not sign the chrono.  Rather, Lieutenant Plainer signed the chrono as the Acting Facility Captain.
>
> 5.   In this lawsuit, Solomon alleged that I had his legal material destroyed when he was placed on MCS on September 7, 2007.  This is not true.  Even if I had ordered Solomon's placement on MCS, I did not order staff to destroy his property.  Based on my customary practice, and as required by prison regulations, his property would have been inventoried and stored while he was on MCS.  His property would not have been destroyed or disposed of unless those items were deemed contraband.  Solomon would also have been given the option of mailing home any of his non-contraband property.
>
> 6.   I have no recollection of Solomon complaining to me that his personal or legal property was disposed of, lost, or destroyed.  Had I seen any officer attempt to or improperly dispose of Solomon's legal or other personal property, I would have taken immediate corrective action.

(ECF No. 134-11 at 1-2.)

Plaintiff's state court pleadings with respect to case nos. 07F03358 and 07F06367, and plaintiff's other related state court actions, are attached to defendants' request for judicial notice. (ECF No. 135).  Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981)).  Accordingly, the undersigned takes judicial notice of these state court pleadings.

////

21

1     Plaintiff filed case no. 07F03358, a habeas corpus petition, in the Sacramento County

2     Superior Court on March 29, 2007.  (ECF No. 135 at 13.)  The Superior Court denied this petition

3     on April 25, 2007.  (Id. at 22.)  Plaintiff filed case no. 07F06367 in the Sacramento County

4     Superior Court on June 25, 2007.  (Id. at 34.)  The Superior Court denied this petition on August

5     14, 2007.  (Id. at 55.)

6         On October 15, 2007, plaintiff filed a habeas corpus petition in the California Court of

7     Appeal.  (Id. at 60.)  On November 27, 2007, plaintiff filed a habeas corpus petition in the

8     California Supreme Court.  (Id. at 74.)

9         On June 12, 2008, plaintiff filed a habeas corpus petition in the instant court.  (Id. at 89,

10    103.)  On May 31, 2010, Magistrate Judge Edmund F. Brennan dismissed the petition as barred

11    by the statute of limitations.  (Id. at 112.)  On December 8, 2010, the Ninth Circuit Court of

12    Appeals dismissed plaintiff's appeal from the May 31, 2010 order by the district court.  (Id. at

13    113-14.)  As noted by defendants, in none of the pleadings filed after September 7, 2007, i.e., the

14    date his legal property was allegedly destroyed, did plaintiff claim that his legal property had

15    been destroyed.

16        Plaintiff's claim in his verified fourth amended complaint that defendant Statti ordered the

17    destruction of his legal property is sufficient to create a genuine dispute of fact as to whether

18    defendant Statti ordered the destruction of his legal property.  See Jones v. Blanas, 393 F.3d 918,

19    923 (9th Cir. 2004).  However, plaintiff does not dispute that both 07F06367 and 07F03358 were

20    filed and denied by the Superior Court before the alleged destruction of his legal property.

21    Plaintiff also does not dispute that he did not claim in his state or federal habeas petitions filed

22    after September 7, 2007, that his legal property had been destroyed.  For these reasons, the

23    undersigned finds that plaintiff has not demonstrated that he suffered an actual injury as a result

24    of the alleged destruction of his legal property.  Accordingly, defendant Statti is granted summary

25    judgment as to this claim.

26        Because the undersigned finds that defendant Statti did not violate plaintiff's

27    constitutional rights, there is no need to address the second prong of the qualified immunity test.

28    ////

Plaintiff's Objections

On March 9, 2015 plaintiff filed objections to this court's January 28, 2015 order, and the declaration of Litigation Coordinator Barba filed in response to that order.  The background to plaintiff's objections is as follows.

On January 26, 2015, plaintiff filed a motion for a court order directing prison officials to return his legal property.  (ECF No. 140.)  Plaintiff alleged that prison officials confiscated all of his legal property on October 8, 2014.  (Id.)  Plaintiff alleged that prison officials previously lied to the court when they stated that plaintiff had access to his legal property.  (Id.)  Plaintiff alleged that most of his legal property was in a warehouse and that prison officials would not give him access to it without a court order.  (Id.)

On January 28, 2015, pursuant to the All Writs Act, the undersigned ordered the Warden where plaintiff was housed to file a status report addressing plaintiff's allegation regarding denial of access to his legal property.  (ECF No. 141.)

On February 5, 2015, the court received a declaration by Substance Abuse Treatment Facility ("SATF") Litigation Coordinator Barba.  (ECF No. 144 at 3.)  In his declaration, Litigation Coordinator Barba explained that plaintiff was in Administrative Segregation ("ad seg").  (Id. at 3.)  Litigation Coordinator Barba stated that plaintiff was permitted to have 6 cubic feet of his legal property in his cell.  (Id.)  The rest of plaintiff's legal property was stored and could be accessed by submitting a request to the law library.  (Id.)  Litigation Coordinator Barba also stated that plaintiff had been granted law library access on several occasions since his transfer to SATF.  (Id. at 3-4)  Litigation Coordinator Barba stated that plaintiff had been granted access to legal supplies.  (Id.)  Litigation Coordinator Barba stated that there was no indication that plaintiff had submitted a request to access his legal property from storage.  (Id. at 4.)

On February 13, 2015, the undersigned denied plaintiff's January 26, 2015 motion for a court order directing prison officials to grant him access to his legal property.  (Id. at 5.)  The undersigned found that Litigation Coordinator Barba's declaration indicated that plaintiff had adequate access to the law library and legal supplies.  (Id.)  With respect to plaintiff's claim that he was being denied access to his legal property, the undersigned found that Litigation

23

Coordinator Barba's declaration demonstrated that plaintiff could request access to his stored legal property.  (Id.)

On February 20, 2015, plaintiff filed a 25 page opposition to defendants' summary judgment motion.  (ECF No. 145.)  On that date, plaintiff also filed a 141 page statement of undisputed facts, including exhibits.  (ECF No. 146.)

In his pending 294 page objections, plaintiff argues that Litigation Coordinator Barba lied. Plaintiff claims that his legal work and legal property is not in his cell or in his immediate possession.  (ECF No. 148 at 2.)  Plaintiff alleges that his legal work is in a warehouse.  (Id.) Plaintiff further alleges that his legal property may have been lost or destroyed.  (Id.)  Attached as exhibits to plaintiff's objections are many of the exhibits included in plaintiff's opposition to the pending summary judgment motion.

According to Litigation Coordinator Barba, plaintiff may access his legal property that is in storage.  Plaintiff has not demonstrated that he followed the procedures discussed in Litigation Coordinator Barba's declaration for obtaining access to his stored property.  Until plaintiff demonstrates that he has followed these procedures, the undersigned will not revisit the issue of plaintiff's alleged inability to gain access to his legal property.  Accordingly, plaintiff's objection, construed as a motion for a court order for access to legal property, is denied.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's objection (ECF No. 148), construed as a motion for a court order for access to legal property, is denied;

2.  Defendants' summary judgment motion (ECF No. 134) is granted, except as noted below;

3.  This action will proceed to trial on plaintiff's claim that defendant Statti made him sleep on the floor; and a scheduling order will issue shortly.

Dated:  March 27, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Sol2544.sj

24